**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UPROOT LINT, LLC, | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | Case No. 22-CV-4925 |
| v. | **)** | |
| | **)** | Judge Jorge L. Alonso |
| THE PARTNERSHIPS AND | **)** | |
| UNINCORPORATED | **)** | Magistrate Judge Gabriel A. |
| ASSOCIATIONS IDENTIFIED ON | **)** | Fuentes |
| SCHEDULE "A", | **)** | |
| | **)** | |
| Defendants. | | |

**COMBINED OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**
**AND MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**

Defendants Does #138 (OJJ-LL), #190 (KEHOO), #252 (ILAIQKOLLC)

(Collectively "***KEHOO")*** respectfully request that this Court deny the motion for

preliminary injunction (DKT#33) and dissolve the Temporary Restraining Order

("***TRO***") entered on September 20, 2022 (DKT#20).

**Plaintiff's Products and Trademark Registrations**

Plaintiff cites two registered trademarks in its Amended Complaint (DKT #

4) and motion for TRO: registrations for UPROOT CLEAN standard character (Reg.

No. 6,812,291) and design (Reg. No. 6,815,080). See Amended Complaint Ex. 1. The

design mark does not appear to be relevant to any claim against KEHOO. UPROOT

CLEAN was applied for on July 7, 2021, on an intent to use basis. An amendment to

allege use was filed on March 18, 2022, claiming a date of first use in commerce of

October 14, 2021, and was published for opposition on May 4, 2022. The registration

was issued on August 9, 2022. 34 days later on, September 12, 2022, this lawsuit

was filed, and the TRO entered on September 20, 2022.

**Defendant's Use of "Uproot" in connection with the sales of their products**

The three stores, Does #138 (OJJ-LL), #190 (KEHOO), #252 (ILAIQKOLLC),

that comprise KEHOO are commonly owned by Dongliang Lei, an individual

residing in Yongzhou, China. As shown in Mr. Lei's Declaration, Exhibit A, prior to

Plaintiff's priority date of July 7, 2021, KEHOO began using the word "Uproot"

either as a description and as a trademark for its handheld lint cleaning products

for sale in the United States through Amazon.com.

KEHOO (Doe #190) began selling handheld lint cleaners as the "Uproot Lint

Cleaner" at least as early as November 10, 2019. Exhibit A, Tab 1, shows the

Amazon sales page for KEHOO's "Uproot Lint Cleaner" largely[1] as it was when the

lint removing product, whose Amazon Sales Identification Number ("***ASIN***") is

B0818VG78C, was on November 10, 2019, and as it remained until the listing was

taken down due to this lawsuit. Exhibit A, Exhibit 1.

The "Product description" section of the listing, Exhibit A, exhibit 1, describes

the product as a "Portable Uproot Lint Cleaner", and states that "The package

includes: 1 x Uproot Lint Cleaner".

---

[1] Exhibit A, 1 is a printout of KEHOO's Canadian Amazon page for B0818VG78C,
with variable material generated by Amazon. The Canadian page for B0818VG78C
is identical to the American page which is not accessible due to the TRO in this
matter. See Declaration of Dongliang Lei, Exhibit A ¶8.

Exhibit A, Tab 2, the sales records for ASIN B0818VG78C, shows that between November 16, 2019 and February 1, 2021, KEHOO, using "Uproot Lint Cleaner" in the description, sold 60,908 "Uproot Lint Cleaner" units (ASIN B0818VG78C) in the United States, all of which sales preceded plaintiff's priority date of July 7, 2021.

Sales of the handheld lint cleaners by KFIAQ-QWAS, an Amazon storefront also owned by Mr. Lei, also preceded plaintiff's priority date of July 7, 2021. As shown in Exhibit 3, KFIAQ-QWAS began using "uproot" as the title for handheld lint cleaners (ASIN B094VWMC8N) on June 20, 2021. The title, in part, of that product was "2 Pack Portable Lint Remover, Fabric Shaver **uproot lint**, Clothes Fuzz Shaver - Reusable Double Sided Lint Remover Travel Brush for Removing Lint" (emphasis supplied). Between June 20, 2021 and July 6, 2021, KFIAQ-QWAS sold 2,774 "uproot lint" units in the United States.

The use of "uproot" in connection with the lint cleaner was based on the common use of the term for that particular type of lint cleaner in 2019, long before Plaintiff's use of the term. See Exhibit A, ¶10. Mr. Lei also described the process by which the word "uproot" began to be used in 2019: "When we first started making this product in 2019, the title was simply 'portable lint remover' as the title. But in the process of operation, we slowly found that the word 'uproot lint cleaner' is one of the best four words to describe this product to convert orders. Using https://trends.google.me/trends/, we found that consumers often use "Uproot" to

search for cleaning products. We slowly put this word in the title, five points inside, so that the order conversion will be higher, i.e., to improve our sales". Ex. A, ¶10.

OJJ-LL and ILAIQKOLLC began using "uproot" sometime after July 6, 2021, but the choice to use "uproot" for those stores was based on the success of "uproot" in connection with the KFIAQ-QWAS and KEHOO storefronts. Mr. Lei had no knowledge of plaintiff's UPROOT CLEAN trademark registration until I heard about this lawsuit. Ex. A, ¶13.

None of the stores OJJ-LL, KEHOO and ILAIQKOLLC, use the term uproot identically to plaintiff's mark UPROOT CLEAN. Rather, they call their product "Uproot Lint Cleaner"[2].

**Based on the facts outlined above, the TRO should be dissolved, and the motion for a preliminary injunction should be denied.**

Plaintiff does not have likelihood of success on the merits of its claims because "Uproot" is either generic or "Uproot" is more strongly associated with Defendants since they sold tens of thousands of handheld "Uproot Lint Cleaners" long before Plaintiff. KEHOO is therefore the senior user of "Uproot" in connection with the handheld lint cleaning devices. Consequently, the registration for UPROOT CLEAN is invalid and should be cancelled.

A motion for preliminary injunction triggers a two-phase analysis—a threshold phase and a balancing phase. *See SFG, Inc. v. Musk*, No. 19-cv-02198,

---

[2] Screenshots submitted to this court in Docket No. 9-3 through 9-13, are believed to demonstrate this, based on representations made by Plaintiff's counsel.

2019 WL 5085716, at *2 (N.D. Ill. Oct. 10, 2019). As this Court has recognized, the

Seventh Circuit has been clear about the nature of preliminary injunctive relief:

"[A] preliminary injunction is an exercise of a very far-reaching power, *never* to be

indulged in except in a case *clearly* demanding it. It is *never* awarded as a matter of

right." *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1072 (N.D. Ill.

2020) (quoting *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965–66 (7th

Cir. 2018) (internal quotations, citations, and punctuation omitted) (emphasis

added)); *see also Health King Enter., Inc. v. Dalian Health King Prods. Co.*, No. 19 C

1878, 2020 WL 1201533, at *3 (N.D. Ill. Mar. 12, 2020) (recognizing the

"extraordinary and drastic" nature of a preliminary injunctive relief, something

"that should not be granted unless the movant, by a clear showing, carries the

burden of persuasion"). Plaintiffs here are not entitled to injunctive relief because

they do not satisfy the threshold requirements. *See SFG,* 2019 WL 5085716, at *15

(noting that where a movant cannot meet the threshold requirements, the court

need not move on to the balancing phase of the analysis). This Court granted a

preliminary injunction based solely upon the information presented by Plaintiffs.

KEHOO respectfully submits that, when its defenses as discussed below are

considered, the preliminary injunction against Defendants should be dissolved. *See*

*Health King*, 2020 WL 1201533, at *3 ("As part of the preliminary-injunction

analysis, a district court may consider a nonmovant's defenses in determining the

movant's likelihood of success on the merits.") (Citation omitted). Specifically,

Plaintiffs cannot demonstrate either a likelihood of success on the merits of their claims against KEHOO.

Based on the testimony of Mr. Lei, "Uproot" was in common use for lint cleaners as early as 2019, at the outset of KEHOO's sale of over 60,000 "Uproot Lint Cleaner" units from November 2019 to February 2021. As Judge Posner noted "To allow a firm to use as a trademark a generic word . . . would make it difficult for competitors to market their own brands of the same product. Imagine being forbidden to describe a Chevrolet as a 'car' or an 'automobile' because Ford or Chrysler or Volvo had trademarked these generic words." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986).

The Federal Circuit has held that "any term that the relevant public uses or understands to refer to the genus of goods*, or a key aspect or subcategory of the genus*, is generic". *Royal Crown Co., Inc. v. Coca-Cola Co.*, 127 USPQ2d 1041, 1046-47 (Fed. Cir. 2018) (emphasis supplied). *See also In re Golden Bison Consol., LLC*, 2021 TTAB LEXIS 135, *5 (Trademark Trial & App. Bd. April 12, 2021. "a term is generic if the relevant public understands the term to refer to part of the claimed genus of goods or services, even if the public does not understand the term to refer to the broad genus as a whole". *In re Cordua Restaurants, Inc.*, 823 F.3d 594, 605 (Fed. Cir. 2016).

This case is analogous to *In re Cordua*, which found that the term "churrasco" was generic, even for use in connection with a broad class of restaurant services,

6

because the key public would understand the term to be referring to a specialty dish—a sub-aspect of restaurant services. *Id.* at 604.

There are numerous cases which, like the present one, where courts have found that a mark identical to a sub-category of a genus was therefore generic.""[P]izzeria" would be generic for restaurant services, even though the public does not understand the term to refer to the broad class of restaurants as a whole; the public need only understand that the term refers to "a particular sub-group or type of restaurant rather than to all restaurants." *Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 1367-68 (Fed. Cir. 2018). *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 148-49 (2d Cir. 1997) ("honey brown" held generic for type of ale); *In re Cooperativa Produttori Latte E Fontina Valle D'Acosta*, 230 U.S.P.Q. 131, 134 (T.T.A.B. 1986) ("fontina" held generic for a type of cheese); *In re Northland Aluminum Prods.*, 221 U.S.P.Q. 1110, 1112 (T.T.A.B. 1984), ("bundt" held generic for variety of ring-shaped coffee cake), *aff'd*, 777 F.2d 1556, 1561 (Fed. Cir. 1985); *Italian Swiss Colony v. Italian Vineyard Co.*, 158 Cal. 252, 257, 110 P. 913, 915 (1910)("tipo" held generic Italian word for a chianti wine). A word may also be generic by virtue of its association with a particular region, cultural movement, or legend. *See Holland v. C. & A. Import Corp.*, **3** 8 F. Supp. 259, 260 (S.D.N.Y. 1934) ("Est Est Est" held generic for wine from Italy's Montefiascone region); *In re Ricci-Italian Silversmiths, Inc.*, 1990 TTAB LEXIS 28, 16 U.S.P.Q.2D (BNA) 1727, 1729 (T.T.A.B. 1990) ("art deco" held generic for flatware made in design style introduced at L'Exposition Internationale des Arts Decoratifs et Industriels

Modernes in Paris); *In re Bauhaus Designs Canada Ltd.*, 1989 TTAB LEXIS 46, 12

U.S.P.Q.2D (BNA) 2001, 2003 (T.T.A.B. 1989) ("bauhaus" held generic for style of

furniture developed at Germany's Bauhaus school of design); *Otokoyama Co. v.*

*Wine of Japan Import, Inc.*, 175 F.3d 266, 271 (2d Cir. 1999)(name for a particular

type of sake is generic as a brand name for sake); *Schwan's IP, LLC v. Kraft Pizza*

*Co.*, 460 F.3d 971, 975 (8th Cir. 2006) (Brick Oven, as used to identify pizza, is a

generic term).

Alternatively, KEHOO's longstanding prior use of "Uproot" to sells tens of

thousands of lint cleaners as "Uproot Lint Cleaners" renders KEHOO the senior

user of the mark UPROOT. As Plaintiff emphasizes repeatedly, it went to

significant efforts to associate itself with the mark UPROOT CLEAN. In the

Complaint, ¶11, Plaintiff claims that "Plaintiff's Trademarks are displayed

extensively in connection with Plaintiff's Products and have been used in connection

with Plaintiff's marketing and promotion efforts. Because of these and other factors,

Plaintiff's Trademarks have become well-known." Although Plaintiff does not cite

any sales records, Plaintiff claims that the marks have achieved "wide recognition",

*Id.* ¶12, and have become "enormously popular", *Id.*¶ 13. Based on those

allegations, it is fair to infer that Plaintiff's sales vastly exceed those of KEHOO's,

rendering this a case of reverse confusion.

> Reverse confusion occurs when a large junior user saturates the market
> with a trademark similar or identical to that of a smaller, senior user. In
> such a case, the junior user does not seek to profit from the good will
> associated with the senior user's mark. Nonetheless, the senior user is
> injured because the public comes to assume that the senior user's products
> are really the junior user's or that the former has become somehow

connected to the latter. The result is that the senior user loses the value of the trademark--its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.
*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) (*citations omitted*)

Thus, Plaintiff's later use of "Uproot" in connection with sales of the lint cleaners has injured KEHOO. Besides the affect on its goodwill and reputation and sales, KEHOO has been subject to this lawsuit and its attendant TRO, which froze KEHOO's various Amazon accounts. KEHOO should be allowed to continue calling its product "Uproot Lint Cleaner" as it was able to prior to Plaintiff acquiring a trademark registration less than two months ago.

Based on either of those two alternative theories, the validity of the mark UPROOT CLEAN is questionable. "Under the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid, but the presumption 'evaporates as soon as evidence of invalidity is presented.'" *Flexible Steel Lacing Co. v. Conveyor Access., Inc.*, 955 F.3d 632, 643 (7th Cir. 2020) (*citations omitted*). Whether "Uproot" as a generic name for a particular type of lint cleaner, or KEHOO is the senior user of the word "uproot" in connection with lint cleaners, Plaintiff's registration for UPROOT CLEAN is invalid.

Moreover, despite Plaintiff's repeated claims, this is not a counterfeiting case, at least as to KEHOO. Under the Lanham Act, a "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark". 15 USC § 1127. KEHOO's use of Uproot Lint Cleaner is neither identical to nor substantially indistinguishable from UPROOT CLEAN.

For the foregoing reasons, Plaintiff lack the requisite likelihood of success on the merits of the claim, and therefore the TRO should be dissolved and the motion for a preliminary injunction should be denied.

Dated: October 17, 2022

Does #138 (OJJ-LL), #190 (KEHOO), #252 (ILAIQKOLLC)

By:/s/ Wesley Johnson

One of their attorneys

Wesley Johnson
Goodman Tovrov Hardy & Johnson LLC
105 W. Madison, Suite 1500
Chicago, IL 60602
(312) 752-4828
Fax: (312) 264-2535
wjohnson@goodtov.com

10

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on October 17, 2022, I served a

copy of the attached **COMBINED OPPOSITION TO MOTION FOR**

**PRELIMINARY INJUNCTION AND MOTION TO DISSOLVE TEMPORARY**

**RESTRAINING ORDER**, on all parties who have appeared via ECF.


By:/s/ Wesley Johnson