**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| UPROOT LINT, LLC | |
| Plaintiff, | |
| v. | **No. 22-cv-4925** |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A", | Hon. Jorge L. Alonso<br><br>Mag. Gabriel A. Fuentes |
| Defendants. | |

<u>**PLAINTIFF'S MOTION FOR RECONSIDERATION AND ENTRY OF PRELIMINARY INJUNCTION AS TO NON-APPEARING DEFENDANTS**</u>

Plaintiff Uproot Lint, LLC ("Plaintiff"), by and through its undersigned counsel, hereby respectfully petitions the Court for Reconsideration of its October 18, 2022 order denying the immediate entry of a Preliminary Injunction as to those Defendants who have yet to appear before the Court. For the reasons outlined below, Plaintiff can establish i) that the UPROOT mark is distinctive, ii) the Defendants' infringing conduct causes confusion in the marketplace, and iii) public interest favors granting the preliminary injunction because the non-appearing Defendants can and will move their assets to off-shore accounts outside this Court's jurisdiction. Therefore, Plaintiff respectfully requests the Court grant Plaintiff's Motion for Reconsideration and enter the Preliminary Injunction as to the Defendants who have yet to appear.

<u>**INTRODUCTION**</u>

In less than two years, Plaintiff, Uproot Lint, LLC, has become a thriving multi-million-dollar business. Indeed, since its founding in March 2021, Plaintiff has generated over <u>$15,000,000</u> in revenue from the sale of its UPROOT branded products and has sold its products throughout the United States. (Second Declaration of Mehul Patel ("Patel Decl." ¶ 4, 6). Plaintiff has also

1

expended substantial resources on the advertising and promotion of its UPROOT brand and has exponentially increased these expenditures over time. Between its first and second month in business, Plaintiff increased its advertising expenditures by 450%. Between its second and third month in business, Plaintiff increased its advertising expenditures by another 300%. In just 18 months, Plaintiff spent well over $7,000,00 in advertising its UPROOT branded products. (*Id.* ¶ 5). The combination of Plaintiff's substantial advertising, marketing expenditure, and the quality of Plaintiff's products have cultivated substantial consumer recognition and goodwill for the UPROOT brand. Various well-known news outlets, such as the Today Show and Vice, have featured UPROOT, without Plaintiff's solicitation. (*Id.* ¶ 20).

In addition, Plaintiff has exercised due diligence in maintaining and protecting its distinctive brand. The United States Patent and Trademark Office granted Plaintiff federal registration for the UPROOT CLEAN mark. Notably, the USPTO carefully analyzed Plaintiff's UPROOT CLEAN trademark and while it required a disclaimer to the CLEAN element, the USPTO did not find UPROOT generic or descriptive[1]. Plaintiff also has pending trademark applications for its UPROOT CLEANER PRO, UPROOT, UPROOT CLEANER ULTRA, UPROOT CLEANER, UPROOT CLEANER XTRA, and UPROOT LINT trademarks, further evidencing Plaintiff's investment in the protection and maintenance of its brand. Finally, Plaintiff polices its marks by maintaining an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive internet sweeps. (Dkt. 34 at 3).

---

[1] In determining Applicant's "UPROOT" element was not generic or descriptive, the USPTO considered whether the element was "merely descriptive of an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services," and determined that UPROOT was not generic or descriptive. *See* 15 U.S.C. §1052(e)(1).

Although Plaintiff has exercised considerable due diligence in protecting its brand, it has reached a position where it can no longer sufficiently protect its business without this Court's intervention. Plaintiff has brought forth this suit to prevent third parties from taking advantage of Plaintiff's rapid success and stymie those infringing activities before they fester and cause greater harm to the Plaintiff and the public.

### *Defendants' Infringing Activities*

As alleged in Plaintiff's Amended Complaint, Defendants herein are engaged in the unauthorized marketing and distributing of unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (collectively, the Counterfeit/Infringing Products) (Dkt. 4 at ¶ 3). Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous internet stores and accounts, and design the same to appear to be selling genuine Plaintiff products, while they are actually selling inferior, unauthorized imitations of Plaintiff's products. (Dkt. 4 at ¶ 16). The Defendants employ tactics to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope of their counterfeit network. (Dkt. 4 at ¶ 23). It is thus critical that the Defendants continue to be subject to the terms previously set forth in the TRO requiring cessation of the infringing activity and restraining of the payment accounts. (Dkt. 20). This is imperative to prevent any attempt on the part of the Defendants from circumventing the Plaintiff's or the Court's enforcement efforts by transferring funds out of those accounts to other accounts outside this Court's jurisdiction [Dkt. 20 at ¶ 7(b)].

### ARGUMENT

In light of the forgoing information, Plaintiff moves this Court to reconsider its October 18, 2022, decision denying entry of Plaintiff's Motion for a Preliminary Injunction as to the non-

appearing Defendants. The Court's decision, as stated on the record, was based on two motions filed on behalf of just four (4) of the five hundred and eighty (580) defendants. (A motion to dissolve the temporary restraining order (Dkt. 41) and an opposition to Plaintiff's preliminary injunction motion (Dkt. 42))[2]. The Motion for Preliminary Injunction, as to those 4 appearing defendants only, was continued. Broadly speaking, these motions argued that Plaintiff's marks are generic (*Id*.), while also asserting defendant specific defenses that are not mutually applicable to any of the non-appearing Defendants.

For the reasons outlined below, Plaintiff's UPROOT CLEAN trademark is distinctive, and Defendants use of UPROOT (on counterfeit products and/or in product listings for inferior products) is highly likely to cause confusion in the marketplace. Thus, there remains more than a reasonable likelihood that Plaintiff will succeed on the merits of its claims.

### I. Plaintiff's Trademarks are Valid and Protectable

The Lanham Act provides that registration of a trademark on the principal register is *prima facie* evidence of its validity. 15 U.S.C. § 115(a). Plaintiff has established, the UPROOT CLEAN trademark has been registered with the USPTO and therefore enjoys a presumption that Plaintiff's trademark is not merely descriptive or generic (Dkt 4. at ¶ 9 and Exhibit 1). Further, Plaintiff did not have to disclaim the "UPROOT" element to achieve registration. *Id.* Collectively, this provides *prima facie* evidence as to the validity and distinctiveness of Plaintiff's UPROOT CLEAN trademark. While it is true that this presumption "may be overcome by *proof* of descriptiveness or by *proof* of genericness . . . [t]he *burden is on the defendant* to overcome that presumption." *Liquid Controls Corp.* F.2d at *Id*. (emphasis added).

---

[2] Attorneys have appeared on behalf of more Defendants but those Defendants have not filed oppositions to Plaintiff's TRO or Motion for Preliminary Injunction

In regard to the Defendants who have not appeared before the Court, it is evident that these Defendants have not met their burden of proof in rebutting the validity of Plaintiff's UPROOT CLEAN trademark and thus have not presented any basis for why this Court should not enter the Preliminary Injunction against them. Similarly, and to the extent the Court is considering the motions filed on behalf of the appearing Defendants, respectfully, the arguments contained therein do not present any probative evidence sufficient to rebut the validity of Plaintiff's UPROOT CLEAN trademark.

### *Plaintiff's Federally Registered UPROOT CLEAN Trademark is not Generic*

The appearing Defendants' motions (Dkt. 41, 42) collectively challenge Plaintiff's UPROOT CLEAN trademark by claiming it is merely "generic" for Plaintiff's products because (i) Defendants have no other alternatives to use other than Plaintiff's trademark, (ii) Plaintiff's trademark is already commonly used by the public, (iii) Plaintiff's trademark is merely a subcategory of a larger genus, and (iv) Defendants purport to provide evidence sufficient to show UPROOT CLEAN's genericness. Each of these arguments fail to provide a successful basis for why Plaintiff's UPROOT CLEAN trademark is invalid.

i. <u>Defendants May Use Alternative Verbiage to Describe Lint and Fabric Removers</u>

First, the appearing Defendants argue for genericness by claiming that they have no other way of referring to their products without using UPROOT CLEAN or UPROOT. However, the standard for "genericness" is a high threshold that absolutely does not apply to Plaintiff's UPROOT CLEAN trademark. This is because a term is generic when it is "*the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling.*" *Ty, Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 531 (7th Cir.2003) (emphasis added). Here, Plaintiff's UPROOT CLEAN trademark is not generic because UPROOT is not the exclusive descriptor for Plaintiff's products. UPROOT CLEAN or UPROOT

are not the only way to refer to the Defendants' products in the marketplace. There are a plethora of other terms available to the Defendants such as, "lint remover," "fiber remover," "fiber shaver," or even "lint scraper." See for example, appearing Defendant TFS's motion, which affirmatively uses these terms *inter alia* to describe its products. (Dkt. 42 at pg. 6, 7). TFS is therefore not required *to exclusively use* Plaintiff's UPROOT CLEAN trademark to describe its products as it claims in its motion (Dkt 42 at pg. 4).

     ii.    <u>Plaintiff's Trademarks are not Common Terms</u>

Defendants KEHOO and TFS further argue that UPROOT CLEAN and UPROOT are "common term[s]" when used with lint cleaners (Dkt. 41 at pg. 3, Dkt. 42 at pg. 4). UPROOT CLEAN is by no means a common term.

Defendant KEHOO alleges that it has previously used "UPROOT" in a generic or descriptive sense in its product descriptions (Dkt. 41 at 2). Even if true, however, this use alone is not enough to establish that Plaintiff's UPROOT CLEAN mark is generic or a "common term." *See Deckers Outdoor Corp. v. Australian Leather Pty. Ltd*., 340 F.Supp.3d 706, 715 (N.D. Ill. 2018) (finding no reasonable jury could conclude that plaintiff's use of UGG was generic and stating: "drawing inferences in [defendant]'s favor demonstrates that some individuals used ugg generically in the past. But this is not enough to justify the conclusion that [plaintiff] footwear purchasers generally view ugg as a generic term.").

Moreover, before Plaintiff adopted its trademarks, Plaintiff searched the internet and the USPTO for usage of the term "UPROOT" for similar goods but found no evidence of its common usage. (Patel Decl. ¶ 10). Here again, it must be noted that the USPTO previously considered whether "UPROOT" was a common term and did not draw that conclusion. Lastly, and practically speaking, when one is trying to remove lint from their clothing or textiles, they do not say, "I need

to UPROOT CLEAN these fibers/lint from this surface" or "I need to UPROOT CLEAN this fuzz off my shirt." Therefore, UPROOT CLEAN is not a common term and the appearing Defendants have not presented sufficient evidence establishing otherwise to meet their burden of proof.

     iii.   <u>Plaintiff's URPOOT CLEAN Trademark is not a Subcategory of a Genus of Products</u>

   Third, Defendant KEHOO claims that UPROOT CLEAN is generic by arguing that "UPROOT" is merely a subcategory for a genus of products. (Dkt. 41 at 6). In support, Defendant KEHOO cited several inapplicable cases where courts have found genericness. (Dkt 41 at pg. 7). Specifically, where CHURASCO was used for restaurant services; PIZZA for restaurant services; HONEY BROWN for a type of ale; FONTINA for a type of cheese; and BUNDT for coffee cakes. *Id.*

   None of these cases have any bearing on Plaintiff's UPROOT CLEAN trademark and certainly do not function as a valid basis for alleging genericness here. Whether a term is generic must be decided on its own facts and circumstances. *See In re Software Design, Inc.,* 1983 WL 51890, at *1 (T.T.A.B. 1983). Plaintiff's products are handheld devices that remove loose fibers from various surfaces. The relationship between Plaintiff's UPROOT CLEAN trademark and its products are not akin to types of food and restaurant services. Neither is the instant situation akin to the situation where the name of a type of cheese is being used as a trademark for cheeses, or a type of cake being used for cakes. Plaintiff's trademark is not "FIBER REMOVER," "HAIR COLLETOR," "LINT SCRAPPER," or any other term that may reasonably be considered a "subcategory of the genus of products." Thus, neither UPROOT or UPROOT CLEAN are generic for Plaintiff's products.

     iv.   <u>The Appearing Defendants have not Provided Probative Evidence of Genericness</u>

Fourth, the appearing Defendants purported evidence of genericness is not sufficient to rebut the validity of Plaintiff's UPROOT CLEAN trademark.

In determining whether a mark is generic, the Court considers factors and evidence including competitors' use, plaintiff's use, dictionary definitions, media usage, testimony of persons in the trade, and consumer surveys. 2 J. Thomas McCarthy, *Mccarthy On Trademarks And Unfair Competition*, § 12:13 (4th ed. 2006); *see also Reno Air Racing Ass'n, Inc. v. Jerry McCord*, 452 F.3d 1126, 1135 (9th Cir.2006) ("[R]egistered marks are endowed with a strong presumption of validity, and a defendant has the burden of showing genericness by a *preponderance of the evidence.*" *Id.* (emphasis added).

As evidence for genericness, Defendant TFS cited a single source, Merriam Webster, which provide definitions that do not accurately define Plaintiff's marks. (Dkt. 42 at pg. 4). As evidence for genericness, Defendant KEHOO provided a single self-serving affidavit claiming that UPROOT CLEAN is generic. (Dkt. 41 at Attachment 1). Neither of this "evidence," individually or collectively, is sufficient to rebut the presumption of validity for Plaintiff's UPROOT CLEAN trademark. *See Deckers Outdoor Corp.*, 340 F.Supp. at 715-716 (finding defendant's evidence comprised of a handful of consumer testimonies, testimony from manufacturers, and advertisements, were insufficient to establish genericness); *see also Timelines, Inc. v. Facebook, Inc.*, 938 F. Supp. 2d 781, 791-793 (N.D. Ill. 2013) (finding defendant's evidence comprised of dictionary definitions, plaintiff's use, use by third parties, and survey evidence, were insufficient to establish genericness).

Defendant TFS's own evidence cuts against its argument. Merriam-Webster's first definition for "uproot" is "to remove as if by pulling up;" its second definition for is "to pull up by *the roots*" (emphasis added); its third definition is "to displace *from a country or traditional habitat*".

Similarly, Google's definition of "uproot" also does not apply to Plaintiff's products by defining the word as to "pull (something, *especially a tree or plant*) out of the ground" (emphasis added).

None of these definitions adequately describe Plaintiff's products that remove lint, pet hairs, and other fibers from various fabrics. This is because the products used with Plaintiff's UPROOT CLEAN trademark function by collecting already loose and dislodged fibers. In other words, Plaintiff's products do not collect these fibers by "uprooting" them from their anchored location. Nor do Plaintiff's products pull fibers up out of their roots. Otherwise, if Plaintiff's products did in fact "uproot" fibers, such an act would either cause pain if used to collect hair from animals, or ruin clothing and textile fibers. Instead, to understand the relationship between Plaintiff's trademarks and its products, one must exercise a degree of imagination to understand the connection. *Kastanis v. Eggstacy LLC*, 752 F. Supp. 2d 842, 849-850 (N.D. Ill. 2010) "[A suggestive term] suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *Id.* Thus, Plaintiff's UPROOT CLEAN trademark is not generic; at most, UPROOT CLEAN is a highly suggestive trademark.

Lastly, even assuming *arguendo* that there is *some* basis hinting toward genericness the standard is whether the "primary significance" of that term is generic. Lanham Act § 14(3), 15 U.S.C. § 1064(3) "the *primary significance* of the registered mark to the relevant public … shall be the test for determining whether the registered mark has become the generic name of goods"); *See also* McCarthy On Trademarks And Unfair Competition, § 12:6 (5th ed. 2017) (In determining whether a term is generic, one must not look to whether a "term has some significance to the public as the generic name of an article, but whether its generic meaning is its *primary significance*.") citing *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118 (1938). This inherently also

necessitates that the majority of the public has come to recognize a term as generic for its products. *See Ty Inc. v. Softbelly's Inc.,* 353 F.3d 528, 69 U.S.P.Q.2d 1213, 57 Fed. R. Serv. 3d 637 (7th Cir. 2003) (The "primary significance" of the term is the legal test of genericness. A survey showing 60% recognition of the term as a trademark is evidence of non-genericness.). Here neither Defendant KEHOO, TFS, or any of the non-appearing Defendants have provided any basis to assert that the "primary significance" of UPROOT CLEAN or UPROOT, is generic to the majority of the consuming public.

Therefore, the appearing Defendants have not sufficiently rebutted the presumption that Plaintiff's UPROOT CLEAN trademark is distinctive and enforceable. And, without any appearance or objection from the *non-appearing* Defendants, Plaintiff has satisfied the first element of its claims - that its mark is valid and distinctive.

## II. Defendants' Unlawful Use of Plaintiff's Trademarks Has Caused and Is Likely to Continue to Cause Consumer Confusion and the Defendants Have Not Provided Evidence Showing Otherwise.

Neither the appearing Defendants nor any of the non-appearing Defendants have rebutted the presumption of validity in connection with Plaintiff's mark. Thus, the analysis now turns to whether the Defendants' use of counterfeit/infringing marks are likely to cause confusion. The *appearing* Defendants have not made any substantive arguments challenging the likelihood of confusion occurring in the marketplace .

The test for trademark infringement is whether the defendant's use of the plaintiff's trademark is likely to cause confusion, deception, or mistake on the part of the consuming public. *McGraw-Edison Co. v. Walt Disney Productions,* 787 F.2d 1163. 1174 (7th Cir. 1986). Here, because the Defendants use virtually identical marks in connection with identical products, the issue of likelihood of confusion is an "open and shut" case. *See McCarthy On Trademarks And*

*Unfair Competition,* § 23:20 (5th ed. 2017). The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, this Court may presume a likelihood of confusion resulting from Defendants' use of Plaintiff's UPROOT CLEAN trademark in this case.

In resolving the issue of likelihood of confusion, the Seventh Circuit also regularly considers certain "likelihood of confusion" factors. *Autozone, Inc. v. Strick,* 543 F.3d 923, 929 (7th Cir. 2008). An analysis of the likelihood of confusion factors further supports the high likelihood that Plaintiff will succeed on the merits of its trademark infringement claims. The Seventh Circuit has identified seven factors for the likelihood of confusion analysis: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products or services; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) intent of the defendant to "palm off" his product as that of another. *Sorensen v. WD-40 Co.,* 792 F.3d 712, 728 (7th Cir. 2016).

While the Defendants, neither appearing or non-appearing, have argued for why these factors do not weigh in Plaintiff's favor, Plaintiff, nonetheless provides a high level analysis for why all of the likelihood of confusion factors weigh in Plaintiff's favor: (1) the Defendants are using trademarks that are identical and/or substantially identical to Plaintiff's UPROOT family of marks; (2) the products sold by the Defendants are identical to the Plaintiff's products in form and function; (3) the area and manner of concurrent use is virtually identical because most of the infringing conduct is occurring on e-commerce sites that Plaintiff actively engages with; (4) the

degree of care likely to be exercised by consumers is low because the products at issue are relatively inexpensive, (5) Plaintiff's UPROOT CLEAN trademark carries a presumption of its inherent distinctiveness and strength; (6) actual confusion has occurred in the marketplace and, once discovery is complete, Plaintiff will be able to present said evidence before the Court; and (7) as stated throughout Plaintiff's pleadings, the Defendants deliberately chose to include Plaintiff's UPROOT CLEAN trademark on their e-commerce listings with the specific intent to capitalize on Plaintiff's success in the marketplaces. Therefore, Plaintiff is highly likely to succeed in establishing a likelihood of consumer confusion because Defendants' have not presented any sufficient arguments or evidence to the contrary.

### III.    Plaintiff's Claims are Likely to Succeed on the Merits Notwithstanding the Appearing Defendants' Defenses

This court should grant Plaintiff's Motion for Preliminary Injunction as to the non-appearing Defendants because they have failed to assert any defenses for their counterfeiting and infringing activities.  As to the defenses asserted by the *appearing* Defendants, namely that the use in *their specific storefronts* qualifies as descriptive fair use or nominative fair use, or that one specific Defendant has priority, these defenses would only apply to that specific Defendant and cannot blanketly apply to each and every one of the remaining five hundred plus Defendants who have yet to appear before the Court. Thus, notwithstanding the arguments made by the appearing Defendants, Plaintiff remains highly likely to succeed on the merits of its claims as to the non-appearing Defendants

### IV.    The Principles of Equity Remain in Plaintiff's Favor Such That Plaintiff's Motion for Preliminary Injunction Should Be Entered As To The Non-Appearing Defendants

Finally, the Principles of Equity continue to favor Plaintiff. A preliminary injunction may be issued upon a showing that the following criteria have been satisfied: (1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiff's favor; and (4) the public interest will not be disserved by the injunction. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). As already outlined in Plaintiff's moving motion, the Preliminary Injunction should be granted because Plaintiff will suffer irreparable injury if a preliminary injunction is not entered, the balance of hardships weigh substantially in Plaintiff's favor, and the public interest is served by entry of a Preliminary Injunction.

### There is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary and Emergency Relief

Irreparable injury is presumed if a showing of likelihood of confusion is made in trademark infringement and unfair competition actions. *Eli Lilly & Co. v. Natural Answers, Inc*., 233 F.3d 456, 469 (7th Cir. 2000). As repeatedly recognized by Seventh Circuit courts, "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's good." *Processed Plastic Co*., 675 F.2d at 857, quoting *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir.1979).

Here, Defendants' unauthorized use of Plaintiff's UPROOT CLEAN trademark has irreparably harmed, and continues to irreparably harm, Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's business reputation, loss of exclusivity, and loss of future sales. (Patel Decl. at ¶¶ 31-35). The extent of the harm to Plaintiff's business reputation and goodwill in the market, and the possible diversion of customers away from Plaintiff due to loss of

13

confidence in Plaintiff's brand, is irreparable and incalculable. *Id.* Therefore, such harm warrants an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill constituted irreparable harm for which plaintiff had no adequate remedy at law).

### The Balance of Hardships and Public Interest Weigh Decidedly in Plaintiff's Favor

Plaintiff's damages, both quantifiable monetarily as well as unquantifiable (e.g., loss of goodwill; loss of exclusivity), far exceed the sums contained in Defendants' restrained accounts. In contrast to Plaintiff's interest in protecting its UPROOT trademarks, Defendants have unlawfully usurped Plaintiff's UPROOT trademarks. Defendants have used trademarks identical and/or substantially similar to Plaintiff's UPROOT trademarks only after Plaintiff began using its trademarks in commerce. Moreover, the injunction requested would not prohibit Defendants from lawfully competing with Plaintiff with similar products. Rather, the injunction would only require the Defendants to stop confusing consumers by mandating that Defendants stop using Plaintiff's UPROOT trademarks. The provisions of the Lanham Act, as well as common law, reflect important public policies aimed at prohibiting unfair competition in the form of false and misleading representations and deceptive trade practices. Thus, public interest requires Defendants to abide by these principles that prohibit them from using and misappropriating Plaintiff's trademarks.

Furthermore, this Court's decision to not rule on Plaintiff's Preliminary Injunction regarding the non-appearing Defendants weighs against the public's interest. In essence, the non-appearing Defendants are being given the opportunity to evade this Court's enforcement merely

because a few Defendants are challenging Plaintiff's Motion for Preliminary Injunction. As the Court found in its Temporary Restraining Order, "in the absence of an *ex parte* Order, Defendants *could and likely would* move assets from accounts in financial institutions under this Court's jurisdiction to off-shore accounts." (Dkt. 20 at pg. 2) (emphasis added). Thus, if this Court does not enter a preliminary injunction, the Defendants who have yet to appear will likely make the Court's prediction true. This will only continue to harm the public by allowing the marketing and selling of inferior products bearing infringing trademarks.

Thus, collectively, the harm suffered by the Plaintiff has no adequate remedy at law, and the balance of hardships and the public interest vastly weighs in favor of Plaintiff such that the entry of a Preliminary Injunction Order requiring that Defendants' financial accounts remain restrained during the pendency of this action is necessary and appropriate.

## <u>Conclusion</u>

In light of the foregoing, Plaintiff respectfully requests that this Court enter the requested Preliminary Injunction Order.

Dated: October 28, 2022

Respectfully submitted,

<u>/s/ DALIAH SAPER</u>
DALIAH SAPER (ARDC NO. 6283932)
BRANDON BEYMER (ARDC NO. 6332454)
SAPER LAW OFFICES, LLC
505 N. LASALLE, SUITE 60654
CHICAGO, ILLINOIS 60654
(312) 527-4100
DS@SAPERLAW.COM
BRANDON@SAPERLAW.COM

ATTORNEYS FOR PLAINTIFF

15

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system and I will send an e-mail to the e-mail addresses provided for Defendants by third parties.

*/s/ Daliah Saper*
Daliah Saper