**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN DOE,<br><br>   Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>   Defendants. | Case No. 22-cv-4925<br><br>**Judge Jorge L. Alonso**<br><br>**Magistrate Judge Gabriel A. Fuentes** |

**SECOND DECLARATION OF MEHUL PATEL**

I, Mehul Patel, declare and state as follows:

1. This Declaration is based upon my personal knowledge of the facts stated herein. If called as a witness, I could and would testify as to the statements made herein.

2. I hold the position of Owner at Uproot Lint, LLC.

3. Plaintiff designs, manufactures, sells, and distributes handheld cleaning devices used to remove pet hair and other loose fibers from clothing, carpeting, furniture, and car interiors (collectively, "Plaintiff's Products").

4. Since March of 2021, Plaintiff has generated over $15,000,000 in revenue from sales of Plaintiff's Products through on-line retail platforms, such as Amazon, Walmart, and Plaintiff's own website (uprootclean.com).

5. Since March of 2021, Plaintiff has expended over $7,000,000 in advertising, promoting, and marketing Plaintiff's Products featuring Plaintiff's Trademarks.

6. Since March of 2021, Plaintiff has sold Plaintiff's Products to all fifty United States and 40 different foreign countries.

1

7. As early as March 6, 2021, Plaintiff began using the trademark UPROOT LINT in connection with the marketing and sale of Plaintiff's Products.

8. Plaintiff applied for registration of the UPROOT LINT trademark with the USPTO on September 27, 2021 (Serial No. 97047705).

9. Plaintiff later also adopted UPROOT CLEAN when Plaintiff concluded its products were not primarily used for lint removal, but better served for removing pet hairs from various household fabrics.

10. Before implementing any of its trademarks, Plaintiff repeatedly searched the Internet and USPTO and for similar trademark usage but found no similar trademarks using the word "uproot" for its specific class of goods.

11. Since March of 2021, Plaintiff has used its UPROOT wordmarks and trademarked logo extensively in connection with the marketing of Plaintiff's Products.

12. Between March 6, 2021 and October 13, 2021 alone, Plaintiff generated over $5,000,000 in revenue from sales of Plaintiff's Products using its initial UPROOT LINT trademark.

13. Between March 6, 2021 and October 13, 2021 alone, Plaintiff expended over $2,000,000 in advertising, promoting, and marketing Plaintiff's Products featuring Plaintiff's initial UPROOT LINT trademark.

14. After applying for registration with the United States Patent and Trademark Office on July 7, 2021, Plaintiff has held valid registrations for the wordmark UPROOT CLEAN and its trademarked logo with the USPTO since August 8, 2022 ("Plaintiff's Trademarks").

15. The Certificates of Registration for these trademarks, as well as Plaintiff's application for the UPROOT LINT trademark, are attached hereto as Exhibit 1.

16. Attached hereto as Exhibit 2 are true copies of portions of Plaintiff's Amazon and Walmart stores, as well as Plaintiff's own website (uprootclean.com).

17. Plaintiff's Trademarks are distinctive when applied to Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.

18. With Plaintiff's swift and expensive initial marketing campaign, Plaintiff's Products rapidly gained enormously popular and appeared on the Today Show, vice.com, and prevention.com.

19. Plaintiff has sold hundreds of thousands of units of Plaintiff's Products and has received hundreds of positive product reviews on e-commerce platforms such as Amazon.com with a 97% approval rating.

20. This popularity has resulted in Plaintiff amassing substantial goodwill on an international level, such that consumers associate Plaintiff's Products with exceptional materials, style, and workmanship.

21. The marketplace success of Plaintiff's Products has resulted in significant trademark infringement and/or counterfeiting of Plaintiff's Products.

22. Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive internet sweeps and reported by consumers.

23. Plaintiff has identified numerous fully interactive e-commerce stores, including those operating the Defendant Internet Stores, which were offering for sale and/or selling Defendants' counterfeit versions of Plaintiff's Products to consumers in this Judicial District and throughout the United States. *See* Exhibit 3 (screen-captures showing appearing Defendants' infringing products and associated store listings).

24. That said, Defendant's Motion to Dissolve the Temporary Restraining Order asserts Defendant #252, KEHOO, began using the word "uproot" either as a description or trademark for its products as early as November 10, 2019. (Dkt 41 at pg. 2).

25. However, the affidavit attached to this Motion explicitly states this Defendant is "unable to locate any contemporary records from 2019 that show the use of "Uproot Lint Cleaner." (Dkt 41, Attachment 1 at ¶ 8).

26. While counsel for this defendant has provided detailed data regarding its relevant Amazon listings dating back through November of 2019, none of the provided listings ever used the word "uproot".

27. Moreover, Defendants #138, OJJ-LL, and #252, ILAIQKOLLC, admit to more prominently using the word "uproot" in their Amazon product listing titles "sometime after July 6, 2021." (Dkt 41 at pg. 4).

28. These Defendants admit that, after first using only "portable lint remover" in their Amazon product listing titles, they "slowly found that the word 'uproot lint cleaner' is one of the best four words to describe this product to convert orders. Using [Google Trends], we found that consumers often use 'Uproot' to search for cleaning products." (Dkt 41 at pg. 3).

29. This timeline falls squarely within the boom of Plaintiff's UPROOT product recognition in the marketplace starting in March of 2021 as demonstrated by the Google Trends data. See the Google Trends data for the word "uproot" attached as Exhibit 4.

30. On information and belief, Plaintiff was using its UPROOT marks in commerce well before Defendants' uses which appear to be a palming off of Plaintiff's rapidly acquired goodwill.

4

31. Defendants' unauthorized use of Plaintiff's Trademarks has caused, and continues to cause, irreparable harm to Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's business reputation, loss of exclusivity, and loss of future sales.

32. Plaintiff has invested substantial time, money, and effort creating Plaintiff's Products and promoting Plaintiff's Products using Plaintiff's Trademarks.

33. The extent of the harm to Plaintiff's business reputation, the goodwill associated therewith, and the possible diversion of customers due to loss in brand confidence are irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief.

34. Plaintiff will suffer immediate and irreparable injury, loss, and damage if Defendants' counterfeiting is not immediately stopped.

35. Defendants have been profiting and continue to profit from the sale of Defendants' counterfeit versions of Plaintiff's Products.

36. In so doing, Defendants have eliminated the exclusivity that Plaintiff was entitled to under the Lanham Act.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Dated: October 27, 2022

*Mehul Patel*

_____

Mehul Patel