**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UPROOT LINT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 22-CV-4925 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| THE PARTNERSHIPS AND ) | |
| UNINCORPORATED ) | Magistrate Judge Gabriel A. |
| ASSOCIATIONS IDENTIFIED ON ) | Fuentes |
| SCHEDULE "A", ) | |
| ) | |
| SHENZHEN LEIPENGDA ) | |
| TECHNOLOGY CO., LTD. ) | |
| ) | |
| Counterclaimant, ) | |
| ) | |
| v. ) | |
| ) | |
| UPROOT LINT, LLC ) | |
| ) | |
| Counterclaim-defendant ) | |
| ) | |
| Defendants. ) | |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Now comes Defendants Does #138 (OJJ-LL), #190 (KEHOO), #252 (ILAIQKOLLC),

#174 (TAILAEN), and #201 (FEENWSY) and for their Answer, Affirmative

Defenses and Counterclaims, state as follows:

### JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in

this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq.,

and 28 U.S.C. §§ 1338(a) and 1331. This Court has jurisdiction over the claims in

this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. §

1

1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

**ANSWER: Admitted.**

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through their operation of, or assistance in the operation of, the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), as well as the shipment of products offered for sale on those Defendant Internet Stores. Specifically, Defendants are involved in the production, listing for sale, sale, and/or shipping of products to Illinois residents that use infringing copies of Plaintiff's federally registered UPROOT CLEAN standard character (Reg. No. 6,812,291) and design (Reg. No. 6,815,080) trademarks (hereinafter "Plaintiff's Trademarks"). Defendants have committed and knowingly participated in the commission of tortious acts in Illinois, causing Plaintiff substantial injury in the State of Illinois.

**ANSWER: With respect to themselves, Defendants admit that venue is proper and they have sold products in the United States and Illinois but deny the remaining allegations in this paragraph. With respect to the**

**other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

## INTRODUCTION

3. Plaintiff specializes in the design, manufacture, sale, and distribution of innovative and high quality handheld cleaning devices used to remove lint and pet hair from clothing, carpeting, furniture, and car interiors. This action has been filed by Plaintiff to combat online counterfeiters and infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's Trademarks (the "Counterfeit/Infringing Products"). On information and belief, Defendants create the Defendant Internet Stores by the dozens and design them to appear to be selling genuine copies of Plaintiff's products, while actually selling Counterfeit/Infringing Products to unknowing consumers.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in the first two sentences of this paragraph. With respect to themselves, Defendants deny the remaining allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegation in this paragraph.**

4. The Defendant Internet Stores share unique identifiers establishing a logical relationship between them and reflecting that Defendants' counterfeiting and infringing operation arises out of the same transaction, occurrence, or series of

3

transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringing operation, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their Counterfeit/Infringing Products.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

5.     Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's Trademarks as well as to protect unknowing consumers from purchasing the Counterfeit/Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's Trademarks and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it is sustaining.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

## THE PARTIES

6.     Plaintiff is a limited liability company organized and existing under the laws of the state of Arizona, having a place of business at 8350 NW 52nd Ter., Suite 301 #309, Doral, Florida 33166.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

7.     Plaintiff is the creator and seller of innovative and high quality handheld cleaning devices used to remove lint and pet hair from clothing, carpeting, furniture, and car interiors ("Plaintiff's Products") which Plaintiff markets and sells using Plaintiff's Trademarks.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

8.     The Plaintiff sells Plaintiff's Products through its own website (uprootclean.com); as well as through its Amazon and Walmart e-commerce storefronts.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

9.      Plaintiff has also registered Plaintiff's Trademarks with the United States Patent and Trademark Office. True and correct copies of the U.S. Certificates of Registration are attached hereto as **Exhibit 1**.

**ANSWER: Defendants deny that registration number 6,812,291 for UPROOT CLEAN is a valid trademark registration. Defendants lack**

5

**knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

10.     The U.S. registrations for Plaintiff's Trademarks are valid, subsisting, in full force and effect. The registrations for Plaintiff's Trademarks constitute *prima facie* evidence of the validity of the trademarks and of Plaintiff's exclusive right to use Plaintiff's Trademarks pursuant to 15 U.S.C. § 1057(b). Plaintiff's Trademarks have been used exclusively and continuously by Plaintiff for years and has never been abandoned.

**ANSWER: Defendants deny the allegations in the first two sentences of this paragraph with respect to registration number 6,812,291 for UPROOT CLEAN. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

11.     Plaintiff's Trademarks are displayed extensively in connection with Plaintiff's Products and have been used in connection with Plaintiff's marketing and promotion efforts. Because of these and other factors, Plaintiff's Trademarks have become well-known.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

12.     Plaintiff's Trademarks are distinctive when applied to Plaintiff's Products signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products

bearing its trademarks are manufactured to the highest quality standards. Plaintiff's Trademarks have achieved wide recognition, which has only added to the inherent distinctiveness of Plaintiff's Trademarks. The marketplace goodwill associated with Plaintiff's Trademarks is incalculable and of inestimable value to Plaintiff.

**ANSWER: Defendants deny the allegations in this paragraph with respect to registration number 6,812,291 for UPROOT CLEAN. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

13. Plaintiff's Products have become enormously popular. This popularity has resulted in Plaintiff amassing substantial goodwill on an international level, such that consumers associate Plaintiff's Products with exceptional materials, style, and workmanship.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

14. Plaintiff has never assigned or licensed Plaintiff's Trademarks to any of the Defendants in this matter.

**ANSWER: With respect to themselves, Defendants admit that Plaintiff has never assigned or licensed Plaintiff's Trademarks to Defendants. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

15.     Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business or assist in business activity conducted throughout the United States (including within the State of Illinois and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of the Counterfeit/Infringing Products, which use counterfeit and infringing versions of Plaintiff's Trademarks. Each Defendant has targeted Illinois by selling or offering to sell or knowingly assisting in the selling or offering to sell, Counterfeit/Infringing Products to Illinois consumers via various online stores, including Alibaba, AliExpress, Amazon, eBay, Etsy, Joom, Shopify, Walmart, and Wish.

**ANSWER: With respect to themselves, Defendants admit that they are business entities in the People's Republic of China operating on Amazon, and deny the other allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

16.     Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine Plaintiff's Products, while they are actually selling inferior unauthorized imitations of Plaintiff's Products. The Defendant Internet Stores share unique identifiers, such as the following: common design elements, the same or similar Counterfeit/Infringing Products that they offer for sale, similar

Counterfeit/Infringing Product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced Counterfeit/Infringing Products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

## DEFENDANTS' UNLAWFUL CONDUCT

17.     Plaintiff's business success has resulted in significant counterfeiting and other infringement of Plaintiff's Trademarks. Consequently, Plaintiff maintains an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified hundreds of fully interactive, commercial Internet stores on various e- commerce platforms, including the Defendant Internet Stores, which are

offering Counterfeit/Infringing Products for sale to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $509 billion in annual online sales in 2016 alone. (See Exhibit 2, Report concerning "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans dated January 24, 2020, at 4.) According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2018 was over $1.4 billion. (See id. at 8.)

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

18.     E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to routinely use false or inaccurate names and addresses when registering with these e-commerce platforms. (See Ex. 2 at 22 (finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and stating that "[s]ignificantly enhanced vetting of third-party sellers" is necessary)).

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

19.     Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. (*See id.* At 22.) While some platforms such as Amazon have recently taken steps to attempt to address these shortcomings, the foregoing deficiencies largely remain.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in this paragraph.**

20.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more aliases identified Schedule A attached hereto, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and, on information and belief, having sold Counterfeit/Infringing Products to residents of Illinois.

**ANSWER: With respect to themselves, Defendants deny they sold or offered to sell Counterfeit Uproot Lint Products, but otherwise admit the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

21.     Defendants employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendant Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon

Pay, Western Union, and/or PayPal. Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use Plaintiff's Trademarks, and none of the Defendants are authorized retailers of genuine versions of Plaintiff's Products.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph, except that they admit to accepting payment in US Dollars in various ways and they admit the last sentence. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

22. On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading, and/or incomplete information to e-commerce platforms, including at least Alibaba, AliExpress, Amazon, eBay, Etsy, Joom, Shopify, Walmart, and Wish. On information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

23.    On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit/Infringing Products on e-commerce platforms such as Alibaba, AliExpress, Amazon, eBay, Etsy, Joom, Shopify, Walmart, and Wish. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down or held accountable for their infringement.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other the defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

24.    Groups of counterfeiters such as Defendants here are typically in communication with each other. They regularly participate in QQ.com chat rooms, and also communicate through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

25.    Counterfeiters such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation in spite of

enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court. Here, on information and belief, Defendants maintain off- shore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such off-shore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their counterfeiting and other infringement of intellectual property rights.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

26.     Defendants' use of Plaintiff's Trademarks in connection with the advertising, distribution, offering for sale, and/or sale of Counterfeit/Infringing Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

27.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**ANSWER: Defendants adopt and reallege their answers set forth in the preceding paragraphs.**

28.     Plaintiff's Trademarks are highly distinctive. Consumers have come to expect the highest quality from Plaintiff's Products offered, sold, and/or marketed under Plaintiff's Trademarks.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

29.     Defendants have sold, offered for sale, marketed, distributed, and advertised, products using counterfeit and/or infringing reproductions of Plaintiff's Trademarks without Plaintiff's permission.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

30.     Plaintiff is the exclusive owner of Plaintiff's Trademarks. Plaintiff's United States Registrations for Plaintiff's Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Trademarks, and are willfully infringing and intentionally using counterfeits of Plaintiff's Trademarks. Defendants' willful, intentional, and

unauthorized use of Plaintiff's Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit/Infringing Products among the public.

**ANSWER: Defendants deny the allegations in this paragraph as the related to registration number 6,812,291 for UPROOT CLEAN. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph as related to the other claimed trademark. Defendants deny all other allegations in this paragraph with respect to themselves. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

31. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

32. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff's Trademarks.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack**

**knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

33. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful advertisement, promotion, offering to sell, and sale of unauthorized versions of Plaintiff's Products using Plaintiff's Trademarks.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**

37. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**ANSWER: Defendants adopt and reallege their answers set forth in the preceding paragraphs.**

38. Defendants' promotion, marketing, offering for sale, and sale of the Counterfeit/Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit/Infringing Products by Plaintiff.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack**

**knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

39.    By using Plaintiff's Trademarks on the Counterfeit/Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit/Infringing Products.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

40.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit/Infringing Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

41.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of Plaintiff's brand.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**COUNT III**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510, et seq.)**

42.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**ANSWER: Defendants adopt and reallege their answers set forth in the preceding paragraphs.**

43.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiff, causing a likelihood of confusion as to the source of their goods, causing a likelihood of confusion as to an affiliation, connection, or association with genuine versions of Plaintiff's Products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion among the public.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

44. The foregoing acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

45. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and associated goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**ANSWER: With respect to themselves, Defendants deny the allegations in this paragraph. With respect to the other defendants, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

**AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**
**FACTS IN COMMON TO AFFIRMATIVE DEFENSES AND**
**COUNTERCLAIMS**

1.      Three of the five stores, Does #138 (OJJ-LL), #190 (KEHOO), #252 (ILAIQKOLLC) are commonly owned by Shenzhen Leipengda Technology Co., Ltd., whose owner is Dongliang Lei, an individual residing in Yongzhou, China.

2.      Two of the stores, #174 (Tailaen), and #201 (Feenwsy), are commonly owned but not directly related to the Shenzhen Leipengda Technology Co., Ltd. Defendants.

3.      Does #174 (Tailaen), and #201 (Feenwsy), Shenzhen Leipengda Technology Co., Ltd., and Mr. Lei have no connection to the other defendants in this case.

4.      As part of its motion for a TRO, Plaintiff has submitted screenshots of the lint removers sold by the five stores. For convenience, those screenshots are attached. OJJ-LL's screenshots, found in DKT# 9-5, pp. 51–53, attached as **EXHIBIT A;** KEHOO's screenshots, found in DKT# 9-6, pp. 74–75, attached as **EXHIBIT B;** ILAIQKOLLC's screenshots, found in DKT# 9-8, p. 14, attached as **EXHIBIT C;** Tailaen's screenshots, found in DKT# 9-6, p. 13, attached as **EXHIBIT D;** Feenwsy's screenshots, found in DKT# 9-6, pp. 114–16, attached as **EXHIBIT E.**

5.      The descriptions on OJJ-LL's lint removers on its Amazon store reads: "Portable Lint Remover,- Reusable Double Sided Lint Remover Travel Brush, uproot lint Cleaner, for Removing Lint ,Carpet ,Pet Hair Dust in Clothes and

Furniture. (1pack-Blue)"; "Clothes Fuzz Shaver – Reusable Double Sided Lint Remover Travel Brush, uproot lint Cleaner, for Removing Lint , Carpet ,Pet Hair Dust in Clothes and Furniture. (1pack-Pink)"; "Portable Lint Remover, Clothes Fuzz Shaver - Reusable Double Sided Lint Remover Travel Brush, uproot lint Cleaner, for Removing Lint , Carpet ,Pet Hair Dust in Clothes and Furniture. (2 pack-(Blue+Pink))". Exhibit A, pp. 51–53.

6.      The description on KEHOO's US' lint remover on its Amazon store reads: "KEHOO Portable lint Remover, Clothing lint Remover, pet Fur Remover, Easily Remove pet Hair, Debris and lint, Make Your Fabric Look New, and Fabric lint Remover to Remove Hair". Exhibit B, p. 74.

7.      The description on ILAIQKOLLC's lint remover on its Amazon store reads: "2Pc-Uproot Lint Cleaner Pet Hair Remover Portable Lint Remover, Fuzz Shaver – Reusable Double Sided Lint Remover Travel Brush for Removing Lint Pet Hair Dust in Furniture". Exhibit C, p. 14.

8.      The description on Tailaen's lint remover on its Amazon store reads: "Uproot Cleaner Pro – Reusable Pet Hair Remover – The Non-Damaging Lint Remover and Carpet Scraper by Uproot Clean – Easy Cat Hair Remover & Pet Hair Remover for Couth Clothes & Rugs". Exhibit D, p. 13.

9.      The description on Feenwsy's lint remover on its Amazon store reads: "Pet Hair Cleaner, Portable Lint Remover, Carpet Cleaning Tool, Double-Sided Fluff Remover, Used to Remove Dust and Pet Hair from Clothes, Furniture, Curtains, Blankets, Sofas (1Pcs)(1Pcs)"; "Uproot Lint Cleaner Lint Cleaner, Pet

22

Hair Cleaner, Portable Lint Remover, Carpet Cleaning Tool, Used to Remove Dust and Pet Hair from Clothes, Furniture, Curtains, Blankets (2Pcs)". Exhibit E, pp. 114–16.

10.     Plaintiff's registered trademark for UPROOT CLEAN, Reg. No. 6,812,291 was initially filed on an Intent Use basis pursuant to Section 1(b) (15 U.S.C. §1051 (b)) on July 7, 2021. An amendment to allege use was filed on March 18, 2022, claiming a date of first use in commerce of October 14, 2021, and was published for opposition on May 4, 2022. The registration was issued on August 9, 2022.

11.     In its application and subsequent statement of use, Plaintiff did not claim that UPROOT CLEAN had acquired secondary meaning.

12.     Beginning at least as early as November 2019, the term "uproot" had been a commonly used name to describe a particular type of lint cleaning product characterized by a copper comb which is particularly effective at cleaning lint and pet hair from carpets and other fabrics.

13.     As shown in Mr. Lei's Declaration, Exhibit F, prior to Plaintiff's priority date of July 7, 2021, Defendants began using the word "Uproot" either as a description and as a trademark for its handheld lint cleaning products for sale in the United States through Amazon.com.

14.     Kehoo (Doe #190) began selling handheld lint cleaners as the "Uproot Lint Cleaner" at least as early as November 10, 2019. Exhibit F, Tab 1, shows the

Amazon sales page for KEHOO's "Uproot Lint Cleaner" largely[1] as it was when the lint removing product, whose Amazon Sales Identification Number ("ASIN") is B0818VG78C, was offered for sale on November 10, 2019, and as it remained until the listing was taken down due to this lawsuit.

15.     The "Product description" section of the listing, Exhibit F, Tab 1, describes the product as a "Portable Uproot Lint Cleaner", and states that "The package includes: 1 x Uproot Lint Cleaner".

16.     Exhibit F, Tab 2, the sales records for ASIN B0818VG78C, shows that between November 16, 2019 and February 1, 2021, KEHOO, using "Uproot Lint Cleaner" in the description, sold 60,908 "Uproot Lint Cleaner" units (ASIN B0818VG78C) in the United States, all of which sales preceded plaintiff's priority date of July 7, 2021.

17.     Sales of the handheld lint cleaners by KFIAQ-QWAS, an Amazon storefront also owned by Mr. Lei, also preceded plaintiff's priority date of July 7, 2021. As shown in Exhibit F, Tab 3, KFIAQ-QWAS began using "uproot" as the title for handheld lint cleaners (ASIN B094VWMC8N) on June 20, 2021. The title, in part, of that product was "2 Pack Portable Lint Remover, Fabric Shaver ***uproot***

---

[1] Exhibit F, Exhibit 1 is a printout of KEHOO's Canadian Amazon page for B0818VG78C, with variable material generated by Amazon. The Canadian page for B0818VG78C is identical to the American page which is not accessible due to the TRO in this matter. See Declaration of Dongliang Lei, Exhibit F ¶8.

*lint*, Clothes Fuzz Shaver - Reusable Double Sided Lint Remover Travel Brush for Removing Lint" (emphasis supplied). Between June 20, 2021 and July 6, 2021, KFIAQ-QWAS sold 2,774 "uproot lint" units in the United States.

18.     The use of "uproot" in connection with the lint cleaner was based on the common use of the term for that particular type of lint cleaner in 2019, long before Plaintiff's use of the term. See Exhibit A, ¶10. Mr. Lei also described the process by which the word "uproot" began to be used in 2019: "When we first started making this product in 2019, the title was simply 'portable lint remover' as the title. But in the process of operation, we slowly found that the word 'uproot lint cleaner' is one of the best four words to describe this product to convert orders. Using https://trends.google.me/trends/, we found that consumers often use "Uproot" to search for cleaning products. We slowly put this word in the title, five points inside, so that the order conversion will be higher, i.e., to improve our sales". Ex. F, ¶10.

19.     OJJ-LL and ILAIQKOLLC began using "uproot" sometime after July 6, 2021, but the choice to use "uproot" for those stores was based on the success of "uproot" in connection with the KFIAQ-QWAS and KEHOO storefronts. Mr. Lei had no knowledge of plaintiff's UPROOT CLEAN trademark registration until he heard about this lawsuit. Ex. F, ¶13.

20.     KEHOO did not use UPROOT CLEAN as a trademark on any online store, and use the term uproot identically to plaintiff's mark UPROOT CLEAN. Rather, they call their products "Uproot Lint Cleaner," as a description of the product type and usage.

21.     At the time of Plaintiff's filing the ITU application on July 7, 2021, a search on Google.com or on Amazon's website or any number of other e-commerce platforms or search engines would have readily yielded numerous examples of the word "uproot" used to describe a particular type of lint cleaning product characterized by a copper comb which is particularly effective at cleaning lint and pet hair from carpets and other fabrics.

22.     This is an exceptional case that merits an award of costs and attorney fees to Counter-Plaintiff pursuant to 15 U.S.C. § 1117(a).

23.     Since Defendants have been accused by Plaintiff of trafficking in counterfeit goods, a felony under 18 USC § 2320, Defendants wish to clear their name and to preclude Uproot Lint from filing future lawsuits accusing them or others of counterfeiting or infringement for the use of "Uproot Clean" as a description of the lint remover.

24.     Therefore, although some of the counterclaims somewhat mirror the counts in the complaint, Plaintiff should not have unilateral control over whether this Court reaches the merits of the case.

25.     For each of the following counts of these affirmative defenses and counterclaims, all preceding numbered paragraphs are realleged as part of the count.

## AFFIRMATIVE DEFENSES

### AFFIRMATIVE DEFENSE I – DESCRIPTIVE FAIR USE UNDER 15 U.S.C. § 1115(B)(4)

26.     OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY's use of "uproot" is fair and in good faith, only used to describe the lint remover feature, and not used as a mark and thus is fair use under 15 U.S.C. § 1115(b)(4) and the complaint should be dismissed with respect to OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY.

### AFFIRMATIVE DEFENSE II – INVALIDITY OF MARK

27.     The UPROOT CLEAN mark, Registration No. 6,812,291 is invalid, as it is either generic or merely descriptive of common and well-known features and types of lint removers.

## COUNTERCLAIMS

For their Counterclaims against Counter-Defendant Uproot Lint, LLC, Counter-Plaintiffs OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY state as follows:

### JURISDICTION AND VENUE

28. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338, and 28 U.S.C. § 1331.

29. This Court has personal jurisdiction over the Counter Defendant, in that Counter Defendant has filed the instant lawsuit, conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this

lawsuit, of which Counter Plaintiff stands accused, were undertaken in Illinois and within this Judicial District.

30. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, since Counter Defendant filed the present lawsuit.

## COUNTER CLAIM COUNT I
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT PURSUANT TO 28 USC § 2201

31. Defendant's use of the term "uproot" on its Amazon page does not infringe any registered or common law trademark owned by Counter-Defendant Uproot Lint, LLC.

WHEREFORE, Counter-Plaintiffs OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY respectfully request that this Court enter an order in its favor and against Counter-Defendant Uproot Lint, LLC that:

A. Declares that OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY's description of its lint removers using the term "uproot" is descriptive and does not infringe any registered or common law trademark held by Counter-Defendant Uproot Lint LLC under 15 USC §1114 and

B. Awards Counter-Plaintiffs their costs and attorney fees pursuant to 15 U.S.C. § 1117(a).

## COUNTER CLAIM COUNT II
## DECLARATORY JUDGMENT OF NON-COUNTERFEITING PURSUANT TO 28 USC § 2201

32. KEHOO'S use of the term "uproot" on its Amazon page does not constitute counterfeiting of any registered or common law trademark owned by Counter-Defendant Uproot Lint, LLC.

WHEREFORE, Counter-Plaintiffs OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY respectly requests that this Court enter an order in its favor and against Counter-Defendant Uproot Lint, LLC that:

C.  Declares that OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY's description of its lint removers using the term "uproot" does not constitute counterfeiting under 15 USC §1114 and 15 USC § 1127, and

D.  Awards Counter-Plaintiffs their costs and attorney fees pursuant to 15 U.S.C. § 1117(a).

**COUNTER CLAIM COUNT III**
**DECLARATORY JUDGMENT THAT DEFENDANTS' USE OF "UPROOT"**
**DOES NOT CONSTITUTE FALSE DESIGNATION OF ORIGIN PURSUANT**
**TO 28 USC § 2201**

33. OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY's use of the term "uproot" on their Amazon pages does not constitute False Designation of Origin within the meaning of 15 U.S.C. § 1125(a).

WHEREFORE, Counter-Plaintiffs OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY respectly request that this Court enter an order in its favor and against Counter-Defendant Uproot Lint, LLC that:

A.  Declares that OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY's description of its lint removers using the term "uproot" does not constitute false designation of origin under 15 USC §1125, and

B.  Awards Counter-Plaintiffs their costs and attorney fees pursuant to 15 U.S.C. § 1117(a).

## COUNTER CLAIM COUNT IV
## CANCELLATION OF TRADEMARK REGISTRATION PURSUANT TO 15 USC § 1119

34. Counter Defendant's UPROOT CLEAN mark, Registration No. 6,812,291, should be cancelled for one or more of the following alternative reasons.

  a. "uproot" is generic when used in connection with lint removers;

  b. "uproot" is descriptive when used in connection with lint removers.

WHEREFORE, Counter-Plaintiffs OJJ-LL, KEHOO, ILAIQKOLLC, TAILAEN, and FEENWSY respectfully request that this Court enter an order in its favor and against Counter-Defendant Uproot Lint, LLC that:

A. Cancels Counter Defendant's UPROOT CLEAN mark, Registration No., Reg. No. 6,812,291, and

B. Awards Counter-Plaintiffs their costs and attorney fees pursuant to 15 U.S.C. § 1117(a).

## COUNTER CLAIM COUNT V
## DIRECT PATENT INFRINGEMENT
## ON BEHALF OF SHENZHEN LEIPENGDA TECHNOLOGY CO., LTD. ONLY

35. Shenzhen Leipengda Technology Co., Ltd. ("*Leipengda*") is not a named party in this action, but it is the beneficial owner and real party in interest for named noncorporate defendants Does #138 (OJJ-LL), #190 (KEHOO), and #252 (ILAIQKOLLC) and files this counterclaim in that capacity.

36. This is an action for infringement of Leipengda's United States Design Patent No. D889,851 under the Patent Act, 35 U.S.C. § 271, based on Uproot Lint's

unauthorized commercial manufacture, use, importation, offer for sale, and sale of its Uproot Cleaner Pro product in the United States.

## JURISDICTION

37. This court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

38. Personal jurisdiction over Uproot Lint is proper in this District because, through this action, it has asserted a claim against Leipengda in this District, it has availed itself of the rights and benefits of the laws of Illinois, it has derived substantial revenue from the sales of the Uproot Cleaner Pro in Illinois, and it has systematic and continuous business contacts with Illinois.

## VENUE

39. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b) because, on information and belief, has committed acts of infringement in this District and has a regular and established place of business in this District, because counterclaim venue is ancillary or pendent to Uproot Lint's choice of venue in this action, and because there is a common nucleus of operative facts related to the parties' use of the term "uproot" and sale and sale of lint cleaner products using the term "uproot."

## PARTIES

40. Counterclaimant Leipengda is a Chinese corporation that maintains its principal place of business in Shenzhen, China.

41. Upon information and belief, Uproot Lint, LLC is a limited liability company formed under the laws of Florida and does business in Chicago, Illinois, including by selling lint brushes and other consumer products and filing lawsuits, including the present case, in this District based on trademark claims for sale of the product that is the subject of this counter-claim.

## FACTS
## The Asserted Patent

42. United States Design Patent Number D899,851 ("***the '851 patent***"), entitled "Lint Remover," was duly and legally issued on July 14, 2020, and names Dongliang Lei as the inventor. Attached as Exhibit G is a true and correct copy of the '851 design patent. On May 24, 2021, Mr. Lei assigned all rights to the '851 patent to the company he owns, Shenzhen Leipengda Technology Co., Ltd., counterclaimant in this action. Attached as Exhibit H is a true and correct copy of the Assignment.

43. The '851 patent claims the ornamental design as shown and described in the patent, including a contoured cylindrical handle from which sprouts a flat Y-shaped frame that forms into short vertical sections and an extended horizonal section. Affixed on opposite edges along the length of the horizontal section are two separate cylindrical textured sections.

**The Accused Product**

44. Uproot Lint has and continues to make, use, sell, offer for sale, and, on

information and belief, import the Uproot Clean Pro in the United States. As shown

below, the Uproot Clean Pro is virtually identical to the design claimed in the '851

patent.

| The '851 Patent | Uproot Clean Pro |
|---|---|
|  | |

45. An ordinary observer or purchaser would find the overall design of the '851

patent and the Uproot Clean Pro substantially similar and mistakenly purchase the

Uproot Clean Pro. Among other things, in a manner that mimics the '851 patent,

the Uproot Clean Pro has a contoured cylindrical handle from which sprouts a flat

Y-shaped frame that forms into short vertical sections and an extended horizontal

section, with two separate textured cylindrical sections affixed on opposite sides along the edges of the horizontal section.

46. On information and belief, as a result of infringing the '851 patent Uproot Lint has been able to sell millions of dollars' worth of its Uproot Clean Pro products.

47. Uproot Lint has been and is infringing the '851 patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, the Uproot Clean Pro in violation of 35 U.S.C. § 271(a).

48. On information and belief, Uproot Lint's infringement has been, and continues to be knowing, intentional, and willful. This case is exceptional and, therefore, Leipengda is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

49. Uproot Lint's acts of infringement of the '851 patent have caused and will continue to cause Leipengda damages for which Leipengda is entitled to compensation pursuant to 35 U.S.C. §§ 284 or 289.

50. Uproot Lint's acts of infringement of the '851 patent have caused and will continue to cause Leipengda immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Leipengda has no adequate remedy at law.

**WHEREFORE**, Leipengda requests judgment against Uproot Lint as follows:

    A. Adjudging that Uproot Lint has directly infringed the '851 patent in violation of 35 U.S.C. § 271(a);

B.  Granting an injunction preliminarily and permanently enjoining Uproot Lint, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '851 patent;

C.  Ordering Uproot Lint to account and pay damages adequate to compensate Leipengda for Uproot Lint's infringement of the '851 patent, including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

D.  Ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

E.  Awarding Leipengda all of Uproot Lint's profits pursuant to 35 U.S.C. § 289;

F.  Declaring this case exceptional and Leipengda its reasonable attorney fees, pursuant to 35 U.S.C. § 285; and

G.  Awarding such other and further relief as this Court deems just and proper.

Dated: February 17, 2023

Does #138 (OJJ-LL), #190 (KEHOO), #252 (ILAIQKOLLC), #174 (TAILAEN), and #201 (FEENWSY)


By:/s/ Wesley Johnson
One of their attorneys

Wesley Johnson
Goodman Tovrov Hardy & Johnson LLC
105 W. Madison, Suite 1500
Chicago, IL 60602
(312) 752-4828
Fax: (312) 264-2535
wjohnson@goodtov.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on February 17, 2023, I served a copy of the attached ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS, on all parties who have appeared via ECF.

By:/s/ Wesley Johnson