IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN DOE,

                Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

                Defendants.

Case No. 22-cv-4925

**Judge Jorge L. Alonso**

**Magistrate Judge Gabriel A. Fuentes**

## PLAINTIFF'S EMERGENCY MOTION FOR SANCTIONS AND DEFAULT

NOW COMES Plaintiff John Doe ("Plaintiff"), by and through its undersigned counsel, and for its Motion for Sanctions and Default against the Defendant Does #138 (OJJ-LL), #190 (KEHOO), #252 (ILAIQKOLLC) (collectively "Defendants") and Defendants' counsel, states as follows:

### INTRODUCTION

Plaintiff is exasperated by Defendants' —and its counsel's — deliberate refusal to respect court-ordered deadlines and failure to communicate about the case. Most recently, on May 18, 2023, and after a series of hearings addressing Defendants' discovery delays, Magistrate Fuentes ordered Defendants to pay Plaintiff's costs and fees in connection with Plaintiff's Amended Second Emergency Motion to Compel. Dkt. 162-164. Judge Fuentes wrote in his order:

> **"It is now well after [the deadline of] 5 p.m. on May 18, 2023. Neither a joint status report nor a defense motion for relief from it was ever filed. Instead, Plaintiff filed a status report (D.E. 162) just before noon, stating that no deposition has been confirmed, that no written discovery has been produced, that no efforts are underway to educate or produce another Rule 30(b)(6) deponent (an option the Court had outlined with Defendants), and that defense counsel has communicated nothing at all to Plaintiff's counsel about any of these matters. The Court waited until the close of business today**

1

**to see if any further filing from Defendants was forthcoming after Plaintiff filed its report, but no defense filing arrived. Defendants were ordered to participate in a joint report, and they chose not to do so. But that means they had their chance to be heard on these issues and passed on that chance. The Court regrets having to take harsh steps to resolve these discovery matters but has concluded that Defendants' conduct in ignoring expedited discovery and the Court's order left the Court with no other choice. Whether Defendants will comply with this Order remains to be seen. Consequences for failing to do so may be matter for the district court on motion."**

Even *after* Judge Fuentes entered his Order granting Plaintiff its fees, Defendants yet again disregarded court-ordered deadlines. Quite brazenly, Defendants did not produce any written discovery by June 2, 2023 as directed by Judge Fuentes's May 18, 2023 Minute Order (Dkt. 163). To be clear, Defendants were specifically directed to produce responses to written discovery that Plaintiff had issued to them, over five months ago, on December 21, 2022.

With oral discovery firmly set to close on Friday June 9, Dkt 167, Plaintiff is now before the district court on a more specific motion for sanctions that not only seeks Plaintiff's attorney's fees and costs for Defendants' failure to comply with discovery deadlines but also seeks sanctions in the form of an Entry of Default and Default Judgement, and/or any additional or alternative relief this court deems appropriate.   As explained in more detail below, such a severe penalty is more than warranted here under a number of legal bases: Rule 37 of the Federal Rules of Civil Procedure, Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority.

**PROCEDURAL HISTORY AND TIMELINE OF DEFENDANTS' AND ITS COUNSEL'S MISCONDUCT**

Plaintiff filed suit against the Defendants on September 12, 2022. Dkt. 1. Plaintiff also sought a Temporary Restraining Order against the five-hundred and eighty (580) e-commerce storefronts ("Seller Aliases") to ensure that all Seller Aliases would comply with any subsequent

judgement. Dkt. 8. If said injunctive relief was not granted in this case, all 580 Seller Aliases would be in a position to stymie any meaningful enforcement of Plaintiff's Trademarks by removing their inventory and financial assets to locations beyond the reach of the U.S. court system. On September 20, 2022, this Court granted Plaintiff's Motion for Temporary Restraining Order. Dkt. 19. Prior to the TRO's expiration, Plaintiff filed a Motion for Preliminary Injunction on October 11, 2022. Dkt. 33.

On October 17, 2022, Defendants filed a Combined Motion in Opposition to Plaintiff's Motion for Preliminary Injunction and Motion to Dissolve Temporary Restraining Order (the "Combined Motion"). Dkt. 41. In the Combined Motion, Defendants asserted priority over the "UPROOT" trademarks by submitting a single, self-serving declaration from Defendants' purported common owner "Dongliang Lei." *Id.* In light of the Combined Motion and the allegations therein, this Court entered and continued Plaintiff's Preliminary Injunction Motion but did not grant the relief request by Plaintiff thereby resulting in the Plaintiff's Temporary Restraining Order entered against the 580 Seller Aliases to expire. Plaintiff thereafter filed a Motion for Reconsideration regarding the Motion for Preliminary Injunction which was denied on October 31, 2022. *See* Dkts. 55, 61.

On December 7, 2022, Plaintiff filed a Motion for Limited Discovery to verify the validity, or lack thereof, of Defendants' claims asserted in its Combined Motion, which was granted on December 14, 2022. Dkts. 106, 111. Plaintiff issued written discovery to Defendants shortly thereafter, on December 21, 2022. In light of the holidays however, the parties communicated and ultimately presented a discovery schedule that was incorporated into Judge Fuentes's December 22, 2022 scheduling order. Dkt. 120. Per the order, the parties were to serve written discovery requests to each other by January 13, 2023, respond to written discovery by February 13, 2023,

and both party depositions and expedited discovery were set to close on March 13, 2023. Dkt. 120. These were firm dates per Judge Fuentes's minute entry. *Id*.

On January 5, 2023 Plaintiff's counsel contacted Defendants' counsel and inquired into the status of ongoing settlement discussions and discovery. In response, Defendants' counsel represented they would meet with their clients and have "concrete proposals" by that following Wednesday (1/11). Plaintiff received no response from Defendants' counsel by that Wednesday. Plaintiff's counsel thereafter followed up with Defendants' counsel inquiring into the continued lack of response and sought further information as to Defendants' purported settlement proposal on January 19, January 20, and January 24. Plaintiff did not receive a response to these inquiries until January 25 where Defendants' counsel stated, "Will get back to you this afternoon." Plaintiff's counsel did not receive any response from Defendants' counsel that afternoon.

On February 13, 2023, *the initial deadline for discovery written responses*, Plaintiff's counsel once again followed up with Defendants' counsel requesting information regarding Defendants' complete silence since their last January 25 correspondence. In said February 13 correspondence, Plaintiff noted that it had not yet received Defendants' written discovery responses, and that Plaintiff had not received any follow-up from Defendants' counsel despite its January 25 assurances. Once again, Plaintiff received no response from Defendants' counsel to these inquires.

Thereafter, rather than respond to Plaintiff or provide the requisite discovery production, Defendants proceeded to, without leave, file an Answer to Plaintiff's Complaint and asserted Patent Infringement counterclaims on February 17. Dkt. 130. Following Defendants' filing, Plaintiff's counsel immediately contacted Defendants' counsel to discuss the ongoing matters on February 17, February 21, and February 24. Defendants' counsel did not respond to Plaintiff until

February 24th wherein Defendants' counsel stated, "I would be happy to discuss in detail on Monday [2/27] or Tuesday [2/28]." Plaintiff's counsel confirmed a meeting for that following Monday the 27th. On the 27th Plaintiff's counsel called Defendants' counsel and received no response and also followed up via electronic correspondence notifying Defendants' counsel of the attempt to communicate. The following day (2/28), Plaintiff's counsel once again followed up with Defendants' counsel and informed Defendants' counsel of Plaintiff's intent to notify the Court of these repeated delays.

Only after Plaintiff gave its intent to notify the Court did Defendants' counsel finally corresponded with Plaintiff's counsel on February 28 and stated, "I have been working on an M & A deal, and it's been a bit consuming. I can talk now if you would like." The parties discussed ongoing settlement matters and Defendants' patent counter claim. Shortly thereafter on March 1st, Plaintiff's patent counsel provided Defendants with an opinion letter outlining the grave issues with Defendants' counter claims and requested an extension to the deadline for Plaintiff's response to the counterclaims. That same day Defendants' counsel confirmed receipt of the opinion letter and stated, "We will review it with our client and respond within 21 days. As to your request for additional time to respond, we agree to the requested extension." The extension for Plaintiff's response to Defendants' counter claims was thereafter filed on March 3 (Dkt. 132) and granted March 6 (Dkt. 133). In light of this extension the parties also agreed to extend the expedited discovery schedule from March 13 to April 28. Dkt. 135.

On March 23, more than 21 days after Defendants' requested time, Plaintiff's patent counsel sought confirmation as to whether Defendants would withdraw their patent infringement counter claim in light the clear deficiencies with that claim as outlined in the March 1st opinion letter. Defendants' counsel responded that same day, "Can you give me another day?" Plaintiff's

5

patent counsel reluctantly agreed to this request but also explicitly required a response by the end of the following business day. That following day (3/24) at 5:22PM Defendants' counsel stated, "I am still discussing with my clients . . . I have asked for answer by Monday [3/27]." Plaintiff did not receive any response from Defendant or its counsel that following Monday.

Plaintiff's patent counsel thus filed a pro hac vice appearance on March 28 and immediately received a call from opposing counsel requesting Plaintiff to refrain from filing any motions because Defendants' counsel was purportedly contemplating withdrawing as counsel if Defendants did not take his advice concerning Defendants' patent infringement counter claim. On March 31, and in an attempt to reach a meaningful resolution, Plaintiff's patent counsel provided Defendant with copies of Plaintiff's patents which included Defendants' asserted patent as prior art references. On April 4 Defendants' counsel confirmed receipt of this correspondence and stated, "I am awaiting my client's final approval of a dismissal. I have told them we must have an answer tomorrow morning [4/5]." Defendant did not file a dismissal of its patent infringement counterclaim that following morning or send any follow up to Plaintiff for the delay. Since Plaintiff had not received any further correspondence from Defendant, Plaintiff incurred the expense of having its counsel draft and file a Motion to Dismiss the counter claim and Memorandum in Support on Friday April 7.  On Monday April 10, Defendant expeditiously filed its Voluntary Dismissal of its patent infringement counter claims. Curiously, Defendant, and its counsel were able to both find the time to communicate and come to a swift resolution regarding the Patent claims despite the prior weeks of purportedly being unable to do so.

By April 20 and *prior to the second deadline for discovery close of April 28*, Plaintiff had worked diligently to respond to Defendants' written discovery requests and deliver its production, provided Defendants with its notice of deposition, and made multiple attempts to schedule a date

for depositions. However, despite Plaintiff's efforts and Defendants' previous assurances, by April 24 Plaintiff had not received any discovery production from Defendants or any justification for the delay. Plaintiff thereafter filed its First Motion to Compel which noted Defendants' continued exhibition of unnecessary and prejudicial delay in not only its own discovery responses, but also in basic communication. Dkt. 153.

On April 27 the Court held a hearing on Plaintiff's First Emergency Motion, at which Defendants' counsel was present telephonically. Dkt. 157. At this time, Plaintiff had yet to receive any discovery production from Defendants. During this hearing, Defendants' counsel acknowledged Defendants' understanding of their obligations and indicated that Defendants would meet and confer with Plaintiff regarding the date for Defendants' deposition, which Defendants' counsel believed could be scheduled for the first week of May 2023. Judge Fuentes then graciously extended the firm discovery deadline *for a second time from April 28 to June 2, 2023*. Judge Fuentes also specifically instructed Plaintiff to file another motion if it became clear that Defendant was not going to comply with written discovery in a timely fashion. By May 4, 2023, Defendants had made no attempts to communicate with Plaintiff's counsel despite Plaintiff's counsel's attempts at communication on May 2, May 3, and May 4. Plaintiff then filed its Second Emergency Motion to Compel Discovery (Dkt. 158) which was entered and continued to May 8, 2023 (Dkt. 160).

At the May 8, 2023, hearing for Plaintiff's Second Emergency Motion, Defendants' counsel appeared and stated that Defendants' designated deponent was working on getting a visa and travelling to a country where they could sit for a deposition. Defendants' counsel further stated that once the visa was approved, Defendants would procure a space for such deposition, which Defendants believed would take place either the week of May 15 or May 22, 2023. Finally, he

stated that Defendants would produce the previously requested written discovery ahead of the deposition. Since the May 8 hearing, Defendants' counsel had provided no update regarding production of the written discovery nor provided any further information regarding the designated deponent's availability for deposition or a plan to educate an alternative available deponent. Plaintiff once again was forced to file another motion - this time fashioned as a combined Status Report and Amended Second Emergency Motion to Compel - due to Defendants' repeated delays and inactions, which also included several sanction requests. Dkt. 162.  Judge Fuentes thereafter granted Plaintiff's motion and reiterated Defendants' written discovery deadline**, of June 2, 2023.** In granting Plaintiff's motion and limited fees, Judge Fuentes further stated:

> **"The Court regrets having to take harsh steps to resolve these discovery matters but has concluded that Defendants' conduct in ignoring expedited discovery and the Court's order left the Court with no other choice. Whether Defendants will comply with this Order remains to be seen. Consequences for failing to do so may be matter for the district court on motion."**

As of the date of this filing, **June 7, 2023**, and despite the multiple extensions granted to them, the Defendants have yet to provide any production to the discovery requests issued to them well over 5 months ago – on December 21, 2022.

## I.  DISCOVERY SANCTIONS PURSUSANT TO RULE 37 OF THE FEDERAL RULES OF CIVL PROCEDURE

### RULE 37.2 STATEMENT

Plaintiff's counsel (Ms. Daliah Saper) met and conferred with Defendants' counsel (Mr. Wesley E. Johnson) by telephone on June 5, 2023 wherein Plaintiff's counsel detailed Defendants' continued discovery deficiencies. On this call, Mr. Johnson stated that he hoped to get "written discovery to Plaintiff by Wednesday" (two days before the date set for oral discovery to be

completed and *after* the extended Court deadline to produce written discovery); that his client had just received a visa (with no proof that the visa had been timely procured or whether it was indeed issued. He simply forwarded a Chinese document that he "thinks" is a visa but can't tell because it is in Chinese); that any deposition would necessarily need to account for the 12-hour time difference between Hong Kong and the US; and that his client does not speak English so a translator would be necessary. Obviously, it will be nearly impossible for Plaintiff's counsel to coordinate this type of deposition with such limited notice and without any of the written discovery production it had expected to receive from Defendants weeks ago. Plaintiff's counsel followed up with Defendants' counsel again by email on June 6, 2023 asking about written discovery and deposition logistics—but, no surprise, has yet to receive any response.

## LEGAL STANDARD

"In accordance with Rule 37 of the Federal Rules of Civil Procedure and the inherent powers of the Court, the Court has discretion to impose discovery sanctions, such as fee awards, costs, evidentiary presumptions and exclusions, and dismissal of claims." *Urban v. United States*, 98 A.F.T.R.2d 2006-5792, 2006 WL 2037354, at *9 (N.D. Ill. July 14, 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991)). Fed. R. Civ. 37 (b)(2)(A)-(C) further outlines several sanctions a court may issue where a party has failed to obey discovery orders which include *inter alia* (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims, (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence, (iii) striking pleadings in whole or in part, and (iv) rendering a default judgment against the disobedient party.

"Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (internal citations omitted). Rule 37 sanctions are appropriate where a party acted with "either willfulness, bad faith, or fault" in violating his discovery obligations. *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir.1992). Willfulness or bad faith may be inferred through a party's "pattern of contumacious conduct or dilatory tactics," *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383 (7th Cir.1993). Additionally, "[b]eyond any rule-based justification, the court's inherent authority to rectify abuses to the judicial process also authorizes sanctions for certain violations. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991)). A court's inherent authority allows the court to exact the following sanctions for discovery violations: (1) dismissal of a party's claim, (2) a fine, and (3) the moving party's costs and attorneys' fees related to the sanctionable conduct. *See Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir.2003) (recognizing that fines are "among the tools available to trial courts to remedy the harms of discovery violations").

## ARGUMENT

Defendants refuse to provide any written discovery while also providing numerous fruitless assurances regarding Defendants' discovery efforts. These discovery violations are willful (or at the very least grossly negligent), have permeated the entire expedited discovery process, and caused Plaintiff to incur extensive and otherwise unnecessary costs and attorneys' fees. To date, the Defendants have not provided any discovery production despite Plaintiff's issuance of its discovery requests on December 21, 2022, two extensions to the expedited discovery schedule (Dkt. 135, 156), three motions to compel discovery (Dkts. 153, 158, 162) and numerous follow-ups and requests for information by Plaintiff's counsel.

In light of the foregoing conduct and the numerous discovery violations during these proceedings, Plaintiff respectfully requests the Court now order serious sanctions against Defendants, including: (1) that Defendants pay all of Plaintiff's attorneys' fees incurred in connection with (a) litigating Defendants' Oppositions to Motion for Preliminary Injunction and Motion to Dissolve Temporary Restraining Order (Dkt 41) and Defendants' patent infringement counter claim (Dkt. 130), and (b) participating in and enforcing discovery deadlines; (2) that all pleadings to date filed on behalf of Defendants in this matter be stricken, including Defendants' Oppositions to Motion for Preliminary Injunction and Motion to Dissolve Temporary Restraining Order (Dkt 41) and the Declaration of Dongliang Lei in support thereof (Dkt. 41-1); (3) that Defendants be prevented from filing any additional pleadings in this matter; (4) that Defendants be prevented from submitting any further evidence in this matter, (5) that Default and Default Judgment be entered against Defendant; and/or (6) in the alternative (but in addition to 1 and 3), that Plaintiff's original Motion for Preliminary Injunction (Dkt. 33) be entered without a hearing. Plaintiff further requests sanctions ordered against.

## II.    THIS COURT SHOULD SANCTION DEFENDANTS PURSUANT TO RULE 11 AND THE COURT'S INHERENT AUTHORITY

### LEGAL STANDARD

Under Rule 11, sanctions are properly assessed when: (1) a party files a pleading that has no reasonable factual basis; (2) the party files a pleading based on a legal theory that has no reasonable chance of success and cannot be advanced as a reasonable argument to change existing law; or (3) the party files a pleading in bad faith for an improper purpose. Fed. R. Civ. P. 11(b). Courts are authorized to sanction parties and counsel for violations of Rule 11 even in the absence of subjective bad faith. *Vollmer v. Selden*, 350 F.3d 656, 659 (7th Cir. 2003) ("[A] judge can sanction

a litigant for filing a frivolous suit or claim regardless of the motives for such filing.") (citation omitted); *see also* Fed. R. Civ. P. 11(c)(1).

ARGUMENT

Based on the Defendants' conduct outlined previously, it is now clear that Defendants never had the intention of engaging in litigation. Rather Defendants filed their Combined Motion and neglected discovery vexatiously and in bad faith. Plaintiff notes that the discovery proceedings which went ignored by the Defendants in every practical sense of the word, were initiated because of Defendants' Combined Motion. In the Combined Motion Defendants primary arguments were that Defendants were the senior user of the "UPROOT" trademark while also claiming that the "UPROOT" trademark was a generic mark incapable of trademark protection. In support of these juxtaposed arguments Defendants submitted a single screen capture from one unverified Amazon listing, and a self-serving affidavit from the Defendants' purported common owner. During discovery Plaintiff sought production regarding Defendants' assertions to ascertain the validity (and good faith basis) of their arguments but as has been discussed at length supra, Defendants have yet to produce any discovery production or otherwise participate in the discovery proceedings they caused.

The Defendants' bad faith, vexatious, and misleading conduct was also exemplified by their inclusion of an untenable counterclaim for patent infringement within their Answer (Dkt. 130). The Defendants asserted patent infringement on behalf of Shenzhen Leipengda Technology Co., Ltd. ("Shenzhen") who Defendants admitted "is not a named party in this action." Dkt. 130 ¶ 35. Shenzhen asserted infringement of the U.S. Pat. No. D889,851 by Plaintiff's designs embodying its products. Plaintiff thereafter sent Defendants a letter outlining the clear legal deficiencies with Defendants' counter claim, for example that venue was improper based on well-established law.

12

*See* Dkt. 142. Plaintiff also noted to Defendants that Plaintiff's product design was protected under its own patents U.S. Pat. Nos. D980,569 and D980,570 which included Shenzhen's asserted patent as a prior art reference. Despite Defendants' knowledge of the clear venue and invalidity issues, Defendants did not voluntarily dismiss their patent infringement counter claim. Rather, Plaintiff was once again required to expend further costs in response to Defendants' untenable positions and filed a Motion to Dismiss (Dkt. 141) the patent infringement counter claims and a Memorandum in Support (Dkt. 142) on Friday, April 7. Expeditiously, Defendants thereafter filed a Voluntary Dismissal of the patent infringement counter claims that following Monday, April 10 before even the Court could schedule briefing deadlines.

As exemplified by the Defendants callous and reckless assertions of baseless claims to which they have shown no intent of meaningfully litigating, along with their complete disregard for the costs resulting to both the Plaintiff and the judiciary, Plaintiff respectfully requests this Court impose serious sanctions to cure the harm that the Defendants have caused in this matter, including: (1) that Defendants pay all of Plaintiff's attorneys' fees incurred in connection with (a) litigating Defendants' Oppositions to Motion for Preliminary Injunction and Motion to Dissolve Temporary Restraining Order (Dkt 41) and Defendants' patent infringement counter claim (Dkt. 130), and (b) participating in and enforcing discovery deadlines; (2) that all pleadings to date filed on behalf of Defendants in this matter be stricken, including Defendants' Oppositions to Motion for Preliminary Injunction and Motion to Dissolve Temporary Restraining Order (Dkt 41) and the Declaration of Dongliang Lei in support thereof (Dkt. 41-1); (3) that Defendants be prevented from filing any additional pleadings in this matter; (4) that Defendants be prevented from submitting any further evidence in this matter, (5) that Default and Default Judgment be entered against Defendant; and/or (6) in the alternative (but in addition to 1 and 3), that Plaintiff's original Motion

13

for Preliminary Injunction (Dkt. 33) be entered without a hearing. Plaintiff further requests sanctions ordered against.

## III.   THIS COURT SHOULD SANCTION DEFENDANTS' COUNSEL PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY

LEGAL STANDARD

Section 1927 of Title 28 permits a party to recover "excess costs, expenses, and attorneys' fees" from an opposing party's attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.  Sanctions for attorney misconduct are determined "not in isolation but in light of 'the entire procedural history of the case.'" *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011) (quoting *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000)). The standard for bad faith is satisfied where "counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders." *Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005) (quoting *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184-85 (7th Cir. 1992)). "If a lawyer pursues the path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Riddle & Assocs. P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (citation omitted).

ARGUMENT

Defendants' counsel engaged in a pattern of egregious and bad faith conduct over the course of this litigation, has unreasonably and vexatiously caused proceedings to multiply, and should therefore be sanctioned under Section 1927, and this Court's inherent authority.

As discussed at length above, Defendants' counsel has shown an unreasonable degree of indifference toward these proceedings and Plaintiff's counsels' numerous attempts at

14

communication. Plaintiff's counsel repeatedly sought to amicably and swiftly resolve disputes between the parties only to be met with either complete silence from Defendants' counsel or responses comprised of one to two lines that did not answer the questions posed. On multiple occasions Defendants' counsel indicated that he was "swamped" or otherwise too busy to engage with Plaintiff and its counsel. Defendants' counsel also repeatedly made multiple assurances to Plaintiff stating that he was working on settlement offers and would respond by a set date only for those dates to come and go with no communication. Moreover, despite being present for all hearings concerning discovery and the representations provided to Plaintiff and the Court, Defendants' counsel nonetheless continued to ignore Plaintiff's attempts to conduct discovery and organize deposition dates.

Defendants' counsel also proceeded with untenable claims of patent infringement despite being given clear evidence of deficiencies in Defendants' claims. Plaintiff's patent counsel provided Defendants' counsel with clear evidence that not only was venue for Defendants' counterclaim untenable but so too was its infringement position. Despite this information Defendants' counsel continued with Defendants' counterclaims. Additionally, despite Defendants' counsel's representations that he was considering withdrawing from further representation, Defendants' counsel did not change course. Defendants' counsel continued to remain silent in response to Plaintiff's counsels' follow ups and information requests. Plaintiff would thereafter have to move forward with its Motion to Dismiss Defendants' patent infringement counterclaims (Dkt. 141) on Friday, April 7, 2023. Defendants' counsel thereafter was curiously able to and expeditiously finally receive a response from their client and file a Voluntary Dismissal of the patent infringement counterclaims that following Monday, April 10, 2023. The timing of which

15

gives a strong indication that Defendant or its counsel never intended to meaningfully defend the patent infringement counterclaim.

Thus, all throughout this litigation, Defendants' counsel has played a key role in facilitation and continuance of the vexatious and malicious litigation that the Defendants have forced upon the Plaintiff to date. In light of the foregoing Plaintiff respectfully requests the following sanctions be entered against Defendants' counsel: (1) Defendants' counsel pay all of Plaintiff's attorneys' fees incurred in connection with (a) litigating Defendants' Oppositions to Motion for Preliminary Injunction and Motion to Dissolve Temporary Restraining Order (Dkt 41) and Defendants' patent infringement counter claim (Dkt. 130), and (b) participating in and enforcing discovery deadlines; (2) that all pleadings to date filed on behalf of Defendants in this matter be stricken, including Defendants' Oppositions to Motion for Preliminary Injunction and Motion to Dissolve Temporary Restraining Order (Dkt 41) and the Declaration of Dongliang Lei in support thereof (Dkt. 41-1); (3) that Defendants be prevented from filing any additional pleadings in this matter; (4) that Defendants be prevented from submitting any further evidence in this matter, (5) that Default and Default Judgment be entered against Defendant; and/or (6) in the alternative (but in addition to 1 and 3), that Plaintiff's original Motion for Preliminary Injunction (Dkt. 33) be entered without a hearing. Plaintiff further requests sanctions ordered against.

CONCLUSION

In light of all of the foregoing, and pursuant to Rule 37 of the Federal Rules of Civil Procedure, Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority, Plaintiff requests the following sanctions be ordered against the Defendants and its counsel: (1) that Defendants and its counsel pay all of Plaintiff's attorneys' fees incurred in connection with (a) litigating Defendants' Oppositions to Motion for Preliminary Injunction and

Motion to Dissolve Temporary  Restraining Order (Dkt 41) and Defendants' patent infringement counter claim (Dkt. 130), and (b) participating in and enforcing discovery deadlines; (2) that all pleadings to date filed on behalf of Defendants in this matter be stricken, including Defendants' Oppositions to Motion for Preliminary Injunction and Motion to Dissolve Temporary  Restraining Order (Dkt 41) and the Declaration of Dongliang Lei in support thereof (Dkt. 41-1); (3) that Defendants be prevented from filing any additional pleadings in this matter; (4) that Defendants be prevented from submitting any further evidence in this matter, (5) that Default and Default Judgment be entered against Defendant; and/or (6) in the alternative (but in addition to 1 and 3), that Plaintiff's original Motion for Preliminary Injunction (Dkt. 33) be entered without a hearing. Plaintiff further requests sanctions ordered against.

Date:  June 7, 2023

Respectfully submitted,

/s/ DALIAH SAPER
BRANDON BEYMER (ARDC NO. 6332454)
BRANDON CAMPILLO (ADDC NO. 6338787)
DALIAH SAPER (ARDC NO. 6283932)
SAPER LAW OFFICES, LLC
505 N. LASALLE, SUITE 60654
CHICAGO, ILLINOIS 60654
(312) 527-4100
BCAMPILLO@SAPERLAW.COM
BRANDON@SAPERLAW.COM
DS@SAPERLAW.COM

ATTORNEYS FOR UPROOT LINT, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2023, I will electronically file the foregoing with the

Clerk of the Court using the CM/ECF system and I will serve a copy of this Motion, on

Defendants' counsel via email.


*/s/* Brandon Campillo